MAR 0 4 2015

MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

Revised 03/06 WDNY

15   CV0201S

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

## FORM TO BE USED IN FILING A CIVIL COMPLAINT IN FEDERAL COURT
### (Non-Prisoner Context)

All material filed in this Court is now available via the **INTERNET**. See **Pro Se Privacy Notice** for further information.

## 1. CAPTION OF ACTION

**A.** **Full Name of Plaintiff: NOTE:** *If more than one plaintiff files this action and seeks in forma pauperis status, **each plaintiff** must submit an in forma pauperis application or the only plaintiff to be considered will be the plaintiff who filed an application.*

Charles Burgin

-vs-

**B.** **Full Name(s) of Defendant(s) NOTE:** *Pursuant to Fed.R.Civ.P. 10(a), the names of all parties must appear in the caption. The court may not consider a claim against anyone not identified in this section as a defendant.* Add a separate sheet, if necessary.

1. Pamela C. Brown
2. Barbara Seals-Nevergold
3. Donald A. Olgovie
9. Patricia Pierce
10. Lawrence Quinn
11. Buffalo Board of Education
4. Theresa Harris-Tigg
5. Carl Paladino
6. James M. Sampson
7. Charles Brandy
8. Will Keresztes

## 2. STATEMENT OF JURISDICTION, VENUE and NATURE OF SUIT
### All of these sections MUST be answered

*Identify the basis for federal Court jurisdiction over your claim, such as that the United States government is a party to the action, all the parties reside in different states and therefore you claim diversity jurisdiction, or the claim presents a federal question or arises under federal law.*

A. Basis of Jurisdiction in Federal Court: Claim arises under federal law plus one defendant lives in Fontana Calif.

*State why the Western District of New York is the proper venue for this action, such as that your claim arises or the defendant resides in the 17 westernmost counties of New York State.*

B. Reason for Venue in the Western District: Claim arises in Erie County Plaintiff and 9 defendants reside in Erie County - 1 defendant in California.

*Identify the nature of this action, such as that it is a civil rights claim, a personal injury or personal property (tort) claim, a property rights claim, or whatever it is.*

C. Nature of Suit: CIVIL AND CONSTITUTIONAL RIGHTS

### 3. PARTIES TO THIS ACTION

**PLAINTIFF'S INFORMATION**  NOTE: *To list additional plaintiffs, use this format on another sheet of paper.*

Name of First Plaintiff: Charles Burgin

Present Address: 22 Bennett Village Terrace
Buffalo N.Y. 14214

Name of Second Plaintiff: Plaintiff asks Court if this case can

Present Address: Also Be Certified on Behalf of Black Male
Students Attending Buffalo Public Schools as Class Action

**DEFENDANT'S INFORMATION**  NOTE: *To list additional defendants, use this format on another sheet of paper.*

Name of First Defendant: Pamela C. Brown

Official Position of Defendant (if relevant): Former Buffalo Public Schools Superintendent

Address of Defendant: Fontana Unified School District
P.O. Box 5090  Fontana CA 92335-5090

Name of Second Defendant: Will Keresztes

Official Position of Defendant (if relevant): Associate Supt. of Buffalo Public Schools

Address of Defendant: Room 712 City Hall
Buffalo N.Y. 14202

Name of Third Defendant: Charles Brandy

Official Position of Defendant (if relevant): Director of Soc in Studies Dept. Buffalo Public Schools

Address of Defendant: Room 712 City Hall
Buffalo N.Y. 14202

### 4. PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A.  Have you begun any other lawsuits in **state or federal court** dealing with **the same facts involved in this action**?

Yes____  No X

If Yes, complete the next section. NOTE: *If you have brought more than one lawsuit dealing with the same facts as this action, use this format to describe the other action(s) on another sheet of paper.*

1.  Name(s) of the parties to this other lawsuit:

Plaintiff(s):_____

Defendant(s):_____

_____

2.    Court (if federal court, name the district; if state court, name the county):_____

_____

3.    Docket or Index Number:_____

4.    Name of Judge to whom case was assigned:_____

5.    The approximate date the action was filed:_____

6.    What was the disposition of the case?

        Is it still pending? Yes____ No____

           If not, give the approximate date it was resolved._____

        Disposition (check those statements which apply):

        _____ Dismissed (check the statement which indicates why it was dismissed):

            ____ By court *sua sponte* as frivolous, malicious or for failing to state a claim upon which relief can be granted;

            ____ By court for failure to prosecute, pay filing fee or otherwise respond to a court order;

            ____ By court due to your voluntary withdrawal of claim;

        _____ Judgment upon motion or after trial entered for

            ____ plaintiff

            ____ defendant.

*See Complaint with Notice of Claim filed March 4, 2014 which [is] incorporated into Complaint*

## 5. STATEMENT OF CLAIM

**Please note** that it is not enough to just list the ground(s) for your action.  You **must** include a statement of the facts which you believe support each of your claims.  In other words, just tell the story of what happened and do not use legal jargon.

**Fed.R.Civ.P. 8(a)** states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted.  Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial."  Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995).

**Fed.R.Civ.P. 10(b)** states that "[a]ll averments of claim ... shall be made in numbered paragraphs, the contents of each of which shall be limited as far a practicable to a single set of circumstances."

**A. FIRST CLAIM:**  On (*date of the incident*) _____,

defendant (*give the **name and (if relevant) the position held** of **each defendant** involved in this incident*) _____

_____

_____

did the following to me (*briefly state what each defendant named above did*): _____

_____

_____

_____

_____

_____

_____

_____

The federal basis for this claim is: _____

_____

State briefly **exactly** what you want the Court to do for you.  *Make no legal arguments and cite no cases or statutes*:

_____

_____

_____

**B.  SECOND CLAIM:**  On (*date of the incident*) _____,

defendant (*give the name and (if relevant) position held of each defendant involved in this incident*) _____

_____

_____

did the following to me (*briefly state what each defendant named above did*): _____

_____

_____

_____

_____

_____

_____

_____

The federal basis for this claim is: _____

_____

State briefly **exactly** what you want the Court to do for you.  *Make no legal arguments and cite no cases or statutes*:

_____

_____

_____

**If you have additional claims, use the above format to set them out on additional sheets of paper.**

**6. SUMMARY OF RELIEF SOUGHT**

*Summarize the relief requested by you in each statement of claim above.*

_See attached Complaint_

_____

_____

_____

_____

_____

Do you want a **jury trial**? Yes _X_ No____

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on ____3/4/15____
                    (date)

**NOTE:** *Each plaintiff must sign this complaint and must also sign all subsequent papers filed with the Court.*

_Charles Burgen_

_____

Signature(s) of Plaintiff(s)

_Michel French 3/4/15_
MICHELE EVANCHO
Notary Public, State of New York
Qualified in Erie County
My Commission Expires ____4/8/2016____

5

United States District Court
Western District of New York

CASE NO.

JURY TRIAL DEMAND

COMPLAINT

PLAINTIFF: Charles Burgin

AGAINST

DEFENDANT: BUFFALO BOARD OF EDUCATION;
FORMER BUFFALO PUBLIC SCHOOLS SUPERINTENDENT PAMELA C. BROWN
ASSOCIATE SUPERINTENT BUFFALO PUBLIC SCHOOLS  WILL KERESZTES
DIRECTOR O SOCIAL STUDIES BUFFALO PUBLIC SchoolS CharleS Brand Y
INTERIM SUPERINTENDENT BUFFALO PUBLIC SchoolS DONALD A. OGILVIE
PRESIDENT BUFFALO BOARD OF EDUCATION JAMES M. SAMPSON
BOARD OF EDUCATION MEMBER CARL PALADINO
BOARD OF EDUCATION MEMBER PATRICIA PIERCE
BOARD OF EDUCATION MEMBER LAWRENCE QUINN
BOARD OF EDUCATION MEMBER Theresa HARRIS-TIGG
BOARD OF EDUCATION MEMBER BARBARA SEALS-NEVERGOLD

NATURE OF CASE

1. This action is brought pursuant to:
   - 42 U.S.C. 1983 EQUAL PROTECTION AND DUE PROCESS, CONSPIRACY OFFICIAL CAPACITY
   - TITLE VII CIVIL RIGHTS ACT OF 1964
   - TITLE I RACE DISCRIMINATION IN FEDERALLY FUNDED PROGRAM 42 U.S.C. 2000 (d)
   - NONDISCRIMINATION IN FEDERALLY FUNDED PROGRAM 31 U.S.C. 370 (H)
   - UNITED STATES CONSTITUTION, DUE PROCESS RIGHTS AND EQUAL PROTECTION CLAUSES OF 14TH AMENDMENT
   - NEW YORK STATE CONSTITUTION DUE PROCESS AND EQUAL PROTECTION CLAUSES
   - NEW YORK STATE EXECUTIVE LAW SEC 290 et seq
   - NEW YORK STATE FRAUD & DECEIT INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONSHIP BUSINESS PLAN
   - NEW YORK STATE INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

2. Seeking declaratory + injunctive relief & damages arising from intentional actions of the defendants in conspiring to sabotage impact study / cost analysis pertaining to 6/12/13 Resolution of Buffalo Board of Education regarding replication of 5000 Role Models of Excellence Project — a mentor program that empowers young Black male students to graduate high school and college — founded by Congressman Frederica S. Wilson in 1993. The 5000 Role Models of Excellence Project; while discriminating against District Parent Coordinating Council mentor Committee Chairman Charles Burgin in his efforts to establish a summer school program to empower young Black male students to build life-skills foundation to help them succeed academically and socially while improving their chances to graduate high school and attend college

3. That Buffalo Public School Board members and Employees acted with deliberate indifference, fraud and deceit, obstruction and intentional interference to violate the due process, equal protection rights of plaintiff Charles Burgin and minority male students attending Buffalo Public Schools, and those of District Parent Coordinating Council mentor committee Chaired by Plaintiff Charles Burgin — and that Plaintiff request Court to provide class action status to their lawsuit to protect rights of minority male students, parents and community stakeholders tasked with improving the chances for the class of minority males to graduate high school, attend college and escape the curse of generational poverty.

(1)

CHAR... allege as follows:

1. That, no other lawsuits concerning this legal complaint has been filed in any other Court or administrative body.

2. That, after a December 4, 2013 meeting with then Superintendent Pamela C. Brown, in her Buffalo Public Schools office concerning the actions of District employees and her refusal to accept written documents evidencing their complicity in sabotaging an impact study / cost analysis ordered by Board resolution of 6/12/13 pertaining to 5000 Role Models of Excellence Project — Plaintiff Charles Burgin, on March 3, 2014, filed a 24 page, 34 exhibits legal Notice of Claim, handwritten which was timely served upon then Buffalo Public Schools Superintendent Pamela C. Brown; Buffalo Board of Education; and their "office of Labor Relations + Legal Counsel".

3. That, by reference he realleges and incorporates the above Notice of Claim containing paragraphs (1) through (54) with 34 exhibits as if fully set forth herein. See exhibit A.

4. That, at all times mentioned herein, the Plaintiff was and still is a United States Citizen.

5. That, Plaintiff Charles Burgin is a Black male who founded Brotherman's Progress Mentors Matter Advocacy organization to advocate on behalf of Black male students and empower them to graduate high school and finish college.

6. That, Plaintiff Charles Burgin also serves as District Parent Coordinating Counsel Mentor Committee Chairman for Buffalo Public Schools, hereafter BPS.

7. That, upon information and belief, the BPS District is a duly created agency of the City of Buffalo governed by the state of New York and the majority of students are Black and minority facing issues of generational poverty who would have greatly benefitted from replication of the 5000 Role Models of Excellence Projects which Plaintiff Charles Burgin was working with Founder Congresswoman Frederica S. Wilson to replicate this proven program in BPS once the Board ordered impact study/cost analysis was completed.

8. That, this suit arises under 28 U.S.C. 1391.

9. That, former BPS Superintendent Pamela C. Brown is now a resident of Fontana California and the rest of Defendants currently are employed by BPS or elected Board members.

10. That, at all times mentioned herein, upon information and belief, BPS is governed by the laws and constitution of New York State; laws and Constitution of United States.

11. That on December 4, 2013, Plaintiff met with BPS Superintendent to discuss wrongful deliberate actions of BPS employees Charles Brandy, Director of Social Studies Dept. and associate Supt. Will Keresztes, Director of Student Support Services; in that Supt. Brown had tasked Will Keresztes to do the above mentioned impact study/cost analysis; and he delegated the authority to Charles Brandy and the BPS Special Mentor Committee which Brandy chaired, and plaintiff serve as a founding member.

12. That, at the December 4, 2013 meeting, BPS Superintendent Pamela C. Brown, hereafter, Supt. Brown, complicitly refused to accept written committee materials which proved that Charles Brandy had intentionally falsified a unilateral report to Dr. Will Keresztes regarding the 6/12/13 Board of Education Resolution order for an impact study/cost analysis — which caused the committee work on the impact study/cost analysis for 5000 Role Models of Excellence Project to be fraudulently shut down.

13. That, everything was riding on this important impact study cost analysis as Program founder Congresswoman Frederica S. Wilson had pledged via letter to Board that upon invitation after the Board passed the 6-12-13 Resolution in support of Plaintiff, The District Parent coordinating Council Mentor Committee, She would come to Buffalo to "help move this important initiative."

14. That, for some unknown reason, Supt. Brown purposely delayed sending any letter after publicly agreeing to do so at a September 2013 public meeting at the Buffalo Common Council Chambers envolving the condition of BPS failing schools and 75% drop-out rate for Block male students.

15, That, during the December 4, 2013 meeting with plaintiff Charles Burgin, and after refusing to accept his written materials that evidenced Charles Brandy's intentional falsification of his unilateral report dated November, 12, 2013, Supt. Brown stated her true feelings which revealed why she had purposely delayed sending out the invitation to Congresswoman Frederica S. Wilson to come to Buffalo. After Plaintiff had questioned her on why she had never responded to his several written requests that she get the letter sent out— Supt. Brown stated "How do you know that I wanted that woman to come here in the first place." See copy of December 4, 2013 Email sent to Supt. Brown placing her on notice that this matter would be appealed to the Board and Plaintiff would be " seeking a legal opinion," marked Exhibit B.

16. That, upon information and belief, defendants Board members Carl Paladino, Patricia Pierce, Lawrence Quinn, James M. Sampson, along with interim Superintendent Donald A. Ogilvie, all intentionally and willfully ignored written requests from the state plaintiff for a meeting to discuss the fraudulent collusive conduct of Charles Brandy, Will Keresztes and Supt. Brown in preventing the impact study/cost analyses to be fairly and honestly completed in regards to replicating the 5000 Role models of Excellence Project in BPS.

(5)

17. That, given the high dropout rate and the lack of high academic achievement for Black male students as a whole, the actions of the Interim BPS Superintendent and actions of the Caucasian majority Board members that wields power over policy considerations affecting the majority of Black male students found to be attending "failing schools" or "schools in need of improvement"; plaintiff is asking the Court to give this lawsuit class action status since the 5000 Role Models of Excellence Project is a known and proven poverty reduction tool helping to break the curse of generational poverty in Miami-Dade County Schools since its inception in 1993.

18. That, Interim Superintendent Donald A. Ogilvie was quoted in a Buffalo News Editorial on 2-27-15, summing up negative conduct which plaintiff experienced on behalf of my advocacy for Black Male students attending BPS. Ogilvie stated that "The board table is a place where good intentions go to die."

19. That, parents and stakeholders who have signed plaintiff's petition evidences the need for Non Descremenation declaratory jugements and injunctive relief that helps to abolish the status quo and rid the District of its culture of indifference which heavily contributes to disparate educational opportunties and results for the class of Black male students currently attending BPS. See exhibit C.

(6)

20. That, Plaintiff Charles Joseph has written various letters and emails to new Board members such as Theresa Harris-Tigg. Here is an email dated December 20, 2013, with the Heading "Follow-up to our conversation at last DPCC meeting" in which you informed that you had not yet read the materials I had BOE Clerk Place in your mailbox concerning the need for an investigation of Charles Brandy's bogus report of 11-12-13 regarding 5000 Role Models of Excellence Project." The body of the email message began "The materials which I dropped off to your mailbox (along with copies to Board president Nevergold and Carl Paladino) dealt with the fact that I was a member of the special Buffalo Public Schools Mentor Committee which was tasked with working with Charles Brandy to help complete the above impact study/cost analysis. Mr. Brandy summarily and fraudulently wrote the November 12, 2013 report and presented to Supt. Brown without the knowledge of myself and apparently any other BPS Special Mentor Committee members. I only found out about the existence of the bogus report because at the November 13, 2013 Speakers List Board meeting — I had requested that Supt. Brown keep her word in which she had agreed during the September Speakers List meeting that she would be sending out a letter to 5000 Role Models of Excellence Project founder Congresswoman Frederica S. Wilson — accepting her offer to come to Buffalo "to help move this important initiative forward." Long story short, Supt. Brown informed during the November 13, 2013 Speakers List Board meeting that she had received a report from Charles Brandy and had to read it before she could proceed any further concerning the 5000 Role Models of Excellence Project. That same Day (November 13, 2013) I had requested that she and Brandy send me a copy which neither complied.

(17)

later, I specifically via email requested a meeting with Supt. Brown in her office and again requested a copy of the bogus report. Supt. Brown then agreed to meet with me on the 4th of December, while having Mr. Brandy send me a copy one day before that meeting. During her short meeting with me Supt. Brown would not accept my written materials evidence that proved Charles Brandy intentionally misrepresented the facts in his November 12, 2013 report. She stated that she would not send me a letter attesting to what transpired at our meeting in her office, and that there could be no appeal to anyone as she had already submitted the November 12, 2013 report of Mr. Brandy to the Board of Education. What completely shocked me was Supt. Brown's statement or question to me when I had pointed out to her that she previously had agreed during a public Speakers first Board meeting to send a letter of acceptance in response to Congresswoman Frederica S. Wilson's offer to come to Buffalo to "help move their important initiative forward." Supt. Brown stated to me " How do you know that I wanted that woman to come here in the first place." I will stop here as I believe that you have the gist of the matter upon which there is a need to meet, discuss and call for an ethical investigation amongst other considerations which the Board has power to entertain. In addition, I have I have attached a copy of the email dated December 4, 2013 which I had sent to Supt. Brown right after our meeting." See exhibit d which is a copy of the December 20, 2013 letter plaintiff sent to Board member Theresa Harris-Tigg.

21. That, in the search for supporters of the 5000 Role models of Excellence Project Plaintiff met with Carl Paladino who pledged his support for the mentor program stating that once Supt. Brown was removed from office he would be able to make it happen.

22. That even though Mr Carl Paladino had been called a racist before being elected to the Buffalo Board of Education, I Plaintiff was willing to give him the benefit of the doubt especially if he demonstrated his concern for the empowerment of young Black Male students in BPS.

23. That Board member _____ in an October 7, 2013 letter of support plaintiff had requested "To whom it may concern. By way of this letter, I express my support of the 5000 Role Models of Excellence Project in its efforts to increase high school and college graduation rates of minority males in Buffalo Public Schools."

24. That via a 2 page email dated 12-24-13, Plaintiff stated to Board member Paladino "I would like to make an appointment with you to personally share my experience evidencing the 'hypocrisy' and incompetency of BPS Supt. Brown — as regarding 5000 Role models of Excellence Project ... I am very aware from past experience with the Buffalo Board of Education or how they can move at a snail's pace when something of importance needs to be addressed immediately, such as what is going on with the unethical and fraudulent conduct of Supt. Brown, Charles Brandy and Dr. Will Keresztes. To protect my rights and those of minority male students who would have been impacted by implementing the 5000 Role Models of Excellence Project in Buffalo Public Schools — I'm embracing our DUE PROCESS rights by preparing a legal Notice of Claim to be filed and served upon the District within the procedural or jurisdictional 90 day period. In addition, I intend to write or compose a formal complaint against Supt. Brown and those involved in deliberately denying myself and minority males a chance to effectuate real change in structural deficient status quo which condemns our students to receiving disparate educational services and opportunities while remaining impoverished, dying prematurely and being mass incarcerated — while the so-called establishment MISLEADERS waste billions!! again I look forward to meeting with you to discuss not only this grave matter of importance to minority males and their families, but the entire community. See exhibit e, which is Dec 24, 2013 email to Carl Paladino.

(9)

25. ... November Carl Paladino has yet to respond or meet well Plaintiff, hence the further need for litigation on behalf of Plaintiff and Black male + minority students, parents and stakeholders.

26. That via email dated Sept. 9, 2014, Plaintiff stated to Board members Car Paladino and Theresa Harris-Tigg "STILL WAITING ON YOU TO SET UP MEETING REGARDING 5000 ROLE MODELS OF EXCELLENCE PROJECT PERTAINING TO BOE RESOLUTION OF JUNE 12, 2013 + NOTICE OF CLAIM FILED MARCH 3, 2014

... This is to inform that since late December 2013, I have submitted various documents and communications to you concerning the involvement of Board employees in a fraudulent scheme against myself, students, parents, and community stakeholders in which we were forced to file a legal notice of claim on March 3, 2014 to protect our interest in the above matters since the Board moves at a snail's pace ... I understand that you both are very busy with Board business and private individual lives and other matters. However, Mr. Paladino, you promised that the above matters would be dealt with in a satisfactory matter once Supt. Brown was discharged and a new Board was sworn in. Dr. Tigg, we last spoke at the memorial held for murdered student Ameer Al Shammari and you agreed for the need for us to meet and discuss the above issues. You have not found time ... We students, parents, community stakeholders and various government leaders urge you to immediately reply to our request for a meeting to discuss the above issues and contemplate a viable solution ... Of course, you both are aware of the on-going dynamics of politics being played in Buffalo School District as regarding Board and administrative support for mentor related projects and programs. We students, parents, and community stakeholders WILL NOT BE DENIED OUR DUE PROCESS RIGHTS - and urge that you immediately contact Charles Burgum to schedule a meeting to discuss proper resolution of our grievances." See exhibit

(15)

27. Carl
Paladino or Theresa Harris-Tigg responded to the
9-9-14 urgent email, exhibit F.

28. That, for the record, Plaintiff hand-delivered
to Board member Carl Paladeno's law office
extensive materials informing him of the Notice
of Claim. The cover sheet dated April 10, 2014
stated " Mr. Paladino please find enclosed
a copy of the actual Notice of Claim I was
forced to file in regards to Board Resolution
of June 12, 2013 regarding the 5000 Role Models
of Excellence Project and the impact study/cost
analysis which was fraudulently compromised
by the above parties acting in collusion. I'm
asking that you review the Notice of Claim and
set up a meeting to discuss this matter and
how I can also file a complaint with New-
York Education Dept. Your consideration in
the matter is appreciated as I await your reply."
See exhibit

29. That, it is ironic that Board member Carl
Paladino never responded to the above request.
Yet he took time to send Plaintiff a racist,
stereotypical email depicting Blacks as inferior,
while also stating " I rid the Board of an incompeten
[Block] Superintendent and her senior staff. I then got
the community so excited they gave us a Board
[WHITE] majority of good people intent on a reform
agenda. The opposition fills the room with
brainwashed Kids, Wacko activist, Phil Rumor's
clan of parasitic teachers and other misinformed
who have nothing better to do. We need everyone
to get into the Arena to conquer this beast." Plaintiff
notes that Board member Carl Paladeno actually
labels the first of his 2 emails "From: Carl
Paladeno TO: Mark Date: February 26, 2015
Subject: Re: Cycle of Poverty." Plaintiff asks
the Court to really take a look at Board member
Carl Paladeno who controls the Board of Education
5-4. Note that he could not find time to reply
to my PLAINTIFF'S emails for a meeting to discuss the plight

of muddled reporting to FBI, DOJ (cover up) and how the 5000 Role Models of Excellence Project (an obvious poverty reduction program) was being fraudulently negated as regarding the actions of Board Employees and Board member themselves in terms of the impact study/cost analyses etc. See exhibit H which is a copy of the emails carl paledino sent dated 2-28-15, 2-26-15, 3-2-15 NeverGoldAnd 2-33-15 CIVIC PARTN

30. That, in July of 2014, Donald A. ogilvie signed a contract to become Interim Superintendent of BPS after Supt. Brown was ousted. See exhibit I.

31. That, A [crossed out] editorial in the Buffalo News dated February 27, 2015 quoted the BPS Interim Superintendent Donald A. Ogilvie "The Board table is a place where good intentions go to die." He could not be further from the truth.

32. That, a 9-27-13 editorial in the Buffalo News "Buffalo's students face more of the same as effort to fire superintendent falls short." "In the end, the Buffalo School Board has voted for more of the same. unless Brown is going to find her own way out the door, that leaves parents, students and taxpayers with little more than the hope that she can accelerate her learning curve to quickly become the superintendent that Buffalo desperately needs. In the meantime, students are failing."

33. That, plaintiff wrote on August 7, 2014 3 page letter to Interim Supt. Ogilvie which stated "Request an immediate meeting to discuss a legal notice of claim I was forced to file on behalf of myself, stakeholders and minority male students as pertaining to 5000 Role Models Of Excellence Project which we seek to implement in BPS. Plaintiff states that the letter explains everything involving the actions of former Supt. Pamela C. Brown and the action of the Board members he had contacted ... "Would you be so kind as to schedule a meeting so that you and I can discuss, not only the above matter but the other important mentor issues such as using the schools and resources to combat issues of senseless

(12)

Violence. I have issues with Dr. Keresztes & Nate Hare (Director of Erie County C.A.O) which need to be addressed by the Superintendent and the Board." See exhibit J.

34. That, for the record — to date, interim Superintendent Ogilvie has yet to respond to Plaintiff's request

35. That, Plaintiff wrote a letter to Board of Education President James M. Sampson dated August 4, 2014 and stamped "received 2014 Aug-4 PM" stating "Seek urgent meeting to discuss the Notice of Claim filed 3-4-14 involving 5000 Role Models of Excellence Project which per Board Resolution of 6-12-13 an impact study/cost analysis was ordered by Board. Also there other matters pertaining to use of Buffalo Public Schools for nonviolence Projects along with mentor Recruitment events." See exhibit K.

36. That, Plaintiff states for the record that to date Board President James M. Sampson has not responded to her letter.

37. That, in the may 2014 school Board election, two of Carl Paladino's endorsed candidates were elected — Patricia Pierce & Lawrence Quinn.

38. That, via letters dated and stamped "received 2014 oct 15" hand-delivered to the Board office for Patricia Pierce & Lawrence Quinn stating "Re: 5000 Role Models of Excellence Project, 6-12-13 Board of Education Resolution in support thereof; legal notice of claim filed March 3, 2014 on behalf of myself and minority male students and families who would have benefitted from this proven poverty reduction mentor program had there been no fraud committed by Board Employees to sabotage the impact study/cost analysis which was ordered by BOE on 6-12-13.

(13)

This is a formal request on behalf of myself, DPCC mentor committee members, students, parents and community stakeholders, for a meeting in which I may give you newly elected Board members an update on the above matter. I previously had been assured by Board member Carl Paladino that this matter would be taken care of to our satisfaction once a new Board was elected and Supt. Brown was replaced. Since the inception of the new Board we have written and hand-delivered notices to Carl Paladino, Dr. Harris-Tega, Board President Sampson and Interem Supt. Ogilvie — without even receiving so much as a courtesy reply. We believe that if this Board really has true concern for placing students first and acting in a manner to see that high academic achievement is a reality for our at-risk minority male students who are dropping out at totally unacceptable rates, being mass incarcerated and victims of homicide — politicization of mentor programs and projects would end. Can we have a discussion? See exhibit L.

39. That, plaintiff states neither Board member Patricia Pierce nor Lawrence Quinn has responded to his and the stakeholder Request.

40. That, to expand on the negative action and conflict of interest relevant to Charles Brown and Associate Superintendent Will Keresztes, Plaintiff references emails dated March 22, 2013. "Asst Supt Keresztes would you be so kind to schedule a meeting so that you and I can discuss matters pertinent to my goals and objectives regarding 5000 Role Models of Excellence Project... See exhibit M.

41. That, Plaintiff by reference incorporates exhibit M in its entirety as if fully set forth herein.

42. That, Plaintiff references an April 26, 2013 email from Tracy Cooley, the BPS Special Mentor Committee secretary that states "The mentor meeting is cancelled until further notice." This was due to actions of Charles Brandy and Will Kereszles after they were put on notice that Plaintiff had issues with their credibility and integrity and would not let them short change our minority males when it comes to providing service and programs for minority males. See exhibit NN.

43. That, Plaintiff references a May 11, 2013 email which he had sent to Committee secretary Tracy Cooley and Gail wells in regards to issues of integrity and conflicts of interest concerning Charles Brandy and Will Kereszles as regarding BPS Special Mentor Committee not selling out the minority male students of BPS. See exhibit OO.

44. That, Plaintiff by reference incorporates exhibit O in its entirely as if fully set forth herein.

45. That, Plaintiff states on June 16, 2014, associate BPS superintendent was appointed to the position of Interim Superintendent once BPS Supt. Brown accepted a buy-out contract.

46. That Plaintiff states on July 2, 2014 Interim Supt. Will Kereszles, earmarked "$40,000 over the next two years for Wegmans' Hillside Work Scholarship Connection." Contrast his actions during spring of 2013 when he met with Plaintiff and other BPS Mentor Committee member "stating that he supported programs like BBBS which does not take money from the district to do their mentor programs." For the record the 5000 Role Models of Excellence Project would have utilized BPS District monetary resources. The Buffalo News

article further quoted Will Keresztes "that he expects unanimous board approval later this month to reallocate money originally budgeted for unnecessary expenditures to cover the $4/20,000 in annual support for the scholarship program each of the next two years." See exhibit P.

47. That, Plaintiff states he met (summer 2014) with Heath Frisch of the BPS Family and Parent Engagement Department to seek District resources and use of a school building to run a summer program for young Black Male students involving Basketball, History/Kulture, academic enrichment and Non Violence Life-Skills Foundation. Mr. Heath Frisch spoke with District Administrators about providing the resources and one of those people was Will Keresztes. Plaintiff was informed that basically no resources were available to assist Plaintiffs Project to empower young Black males. However what really shocked Plaintiff was the fact that Mr. Heath Frisch informed plaintiff Via email dated July 24, 2014.

"I had a conversation with Dr. Keresztes where I was explaining your program and he advised me that all mentoring programs should be coordinated through Mr. Nate Hare." See trail of emails dated from June 17, 2014 through July 24, 2014 marked exhibit Q.

48. That, Plaintiff by reference incorporates exhibit Q as if fully set forth herein.

49. That, Plaintiff wants the record to reflect that his Notice of Claim filed March 3, 2014 contains email evidence with certain exhibits and reveals that Nate Hare (I. Nathan Hare) is Executive Director of Erie County C.A.O., and as Administrator of Black Mans Think Tank, he tried to manipulate

things with Supt. Pamela C. Brown was behind Plaintiff's back and had contacted Supt. Brown to try and take over things after Plaintiff had worked so hard with former Board Member Lou Petrucci and Mr. Hernandez to get the 6-12-13 Board Resolution passed which ordered the impact study / Cost analyses for 5000 Role Models of Excellence Project which was a program to increase graduation rates of young Black male students and to finish college. Also for the record, Nate Hare is mentioned in an exhibit (March 3, 2014 Notice of Claim) which was a certified letter he had written to Buffalo Mayor Byron Brown as regarding attempts by Nate Hare Councilman Smith before and others whom Charles Brandy was aligned with, as they later received support from Will Keresztes. Plaintiff offers exhibit R which contains material and emails which when taken with exhibits concerning Nate Hare in the March 3, 2014, paints a picture of the Collusion between Charles Brandy, Will Keresztes Nate Hare and others to interfer with the advancement of 5000 Role Models of Excellence Project because since they could not hijack or control the program they simply created their own version to replace it — and in the process hurt the efforts to empower Black male students in BPS who would have benefitted by being a part of the 5000 Role Models of Excellence Project which is planning to go National and has the full support of President Obama and his "My Brother's Keeper" initiative involving government, business and Education leaders along with clergy. See exhibit R for info on Nate Hare and BPS mentor Programs and concerns.

50. That, plaintiff by reference incorporates exhibit R as if fully set forth herein -

51. That, emails dated May 27, July 10, July 17, of 2014 evidence Mr. Hare's activities with the united Block men's Think Tank, the Erie County C.A.O. and his connection with BPS to control all mentor Related functions and projects at BPS while working with Charles Brandy, Dr. Will Kereszter and Board members. See exhibit S.

52. That, the July 17, 2014 email from United Block mens Think Tank states Regarding Nate Hare "Due to your recent actions has been determined to be unbecoming of a professional and a gentleman, your membership in the United Block mens Think Tank has been rescinded effective immediately"

53. That, Plaintiff also states for the record that he had a conversation with one of the BPS mentor committee members about what was happening with the shutting down of the committee's work to perform the impact study/Cost analysis for 5000 Role Models of Excellence Project. She stated to Plaintiff that Mr. Nate Hare says you (Plaintiff) were movene too slow with the 5000 Role Models of Excellence Project.

54. That, Plaintiff by reference incorporates exhibit S as if fully set forth herein.

55. That, concerning Charles Brandy intentionally false report of November 12, 2013, he states "Mr. Burgin did not participate in the October 12th (2013) conference call and closed all communication", the actual BPS Special mentor committee records evidence that at no time was any conference call scheduled for October 12, 2013. The record truthfully reflects that Plaintiff and committee member Gail Wells had initially planned to have a conference call scheduled

for October 11, 2013 (Not October 4, 2013) The committee records prove that Charles Brandy lied.

57. That, the records of the committee reflect that:
A) Committee chairman Charles Brandy himself sent out an email dated October 10, 2013 at ~~3:25 AM~~ and 12:56 PM. "Hello everyone our conference call is scheduled for 4: PM Friday October 11, 2013.

B) That, on Friday October 11, 2013 at 3:39 AM, Plaintiff sends email to committee member Esail Wells. "Hold on! ... Instead of holding a conference call today, I find it imperative that we meet to discuss the BPS mentoring initiative and Esail Wells understanding. Furthermore, I'm in process of putting together the steering committee which will be addressing the major issues and concerns with emplementing the 5000 Role models of Excellence Project in BPS, and preparing for congresswoman Frederica S. Wilson's Visit to Buffalo — especially in light of the fact her visit will coordinate the ongoing campaign to build a movement to recruit and sustain mentors etc., I do not intend to rush things and fully understand that everything cannot be done by the January 13, 2014/tentative date so I'm looking at September 2014 as a more realistic goal for emplementing the 5000 Role Models of Excellence Project in BPS"

C) That, Esail Wells replied to the above by email dated October 11, 2013 1:57 PM. "Hotep Brother Charles, Everyone who called in for the conference call felt the conference call should be cancelled as per your suggestion be replaced with a meeting. A meeting time was identified therefore we need to know if you are available to meet next Friday on October 18 at 11 AM. The meeting would be held at the regular location. If this is not convenient for you please provide another time when you are available as we feel we cannot proceed without your input."

d) That, Via email dated October 14, 2013, Plaintiff Charles Bergin states to committee member Esail Wells "This is to inform that I am not available for the 18th of October. I will be available for a meeting on Friday the 25th after 1:30 PM.

At that meeting we shall descuss the formal role of the BPS Mentor Committee as regarding 5000 Role Models of Excellence Project which has nothing to do with the so-called Buffalo Mentor Initiative."

(Note: The Buffalo mentor Initiative was a program name utilized by Nate Hare, Councilman Demone Smith and others.)

Continuation of above email. "We will descuss for the record, how the Steering committee which I'm putting together to advance the objectives and implementation of 5000 Role Models of Excellence Project in BPS; along with the impact study/Cost analysis which cannot be perfected performed until after my business plan and budget has been perfected, along with other pertinent concerns and timeliness."

e) That For the record Isaul Wells called Plaintiff Charles Burgin and stated she would not be available on Friday the 25th or the 28th thru 31st of October as she was leaving on a trip. She then sent out an email to committee members on October 23rd stating that "I am leaving for Baltimore tomorrow morning."

f) That Charles Burgin Plaintiff states that the mentor committee did not meet on a weekly basis but the normal process was for secretary Tracy Cooley to contact members to see if a particular date and time was agreeable for everyone, if we had not set a time and date at the time of the last meeting. Therefore everyone knew that the next meeting would not be held until Isaul Wells had returned. Also for the record Charles Brondy had my cell phone and email address and could have placed a call to me if he had any concerns. That's why his actions to unilaterally expose his November 12, 2013 bogus letter which lead to the impact study/cost analysis being terminated on a fraudulent bases.

58. That, plaintiff offers proof that he had not closed all communications with committee on "October 12, 2013" as the record reflects that he was still out in the field contacting possible supporters for the 5000 Role Models of Excellence Project. See exhibit T.

62. That upon information and belief, the actions engaged in by the defendants herein were violative of 42. U.S.C. 1983 Equal Protection and Due Process – official capacity acting & Conspiracy.

AS AND FOR THE SECOND, THIRD, FOURTH, FIFTH, SIXTH, Seventh and EIGHTH CAUSES OF ACTION and NINTH CAUSES OF ACTION

63. That Plaintiff reaffirms and realleges the allegations set forth in paragraphs (1) through (63) as if fully set forth herein along with paragraphs (1) through (54) of Plaintiffs Notice of Claim filed March 3, 2014.

64. That upon information and belief, the actions engaged in by the defendants herein were violative of Title VII Civil Rights Act of 1964.

65. That upon information and belief the actions engaged in by the defendants were violative of Title I Race Discrimination in federally funded Program 42 U.S.C. 2000d

66. That upon information and belief, the actions engaged in by the defendants were violative of Nondiscrimination of in Federally funded program 31 U.S.C. 370(H)

67. That upon information and belief, the actions engaged in by the defendants were violative of United States Constitution, Due Process Rights and Equal Protection clauses of 14th Amendment.

68. That upon information and belief, the actions engaged in by the defendants were violative of New York State Constitution Due Process and Equal Protection clauses.

69. That upon information and belief, the actions engaged in by the defendants were violative of New York State Executive Law Sec. 290 et seq.

70. That upon information and belief, the actions engaged in by the defendants were violative of New York State Fraud and Deceit interference with prospective contractual Relationship business plan.

71. That upon information and belief, the actions engaged in by the defendants were violative of New York State Laws Intentional Infliction of Emotional Distress, Pain and suffering

59. That, Plaintiff incorporates exhibit T as if fully set forth herein.

60. That, plaintiff offers a June 2, 2014 email from Black man thenk Tank member Hosie Arnold to fellow members requesting that they support BPS outgoing BPS supt. Pamela Brown... in light of the fact she and current school board President, Dr. Barbara Seals-Nevergold attended our dinner party fundraiser last February 22nd and assured us in moving our mentoring project forward with Buffalo Schools." Plaintiff states for the record that when the united Black mens Think Tank was receiving the above support from supt. Brown and then Board President Barbara Seals-Nevergold, Nate Hare was then administrator of United Black mens Think Tank - before leaving and taking the mentor program away from the Think Tank to deal with Will Keresztes at BPS. See exhibit V which is the June 2, 2014 email.

61. That, Plaintiff states all the facts in this case reveal that there was a conspiracy against Charles Burgin having any success with the important study / costandyin for 5000 Role models of Excellence Project. When the trier of fact takes the above paragraph into consideration which reveal that supt. Brown and Board President Seals-Nevergold were working on behalf of Nate Hare and the United Black mans Think Tank — and then contrasts it with the fact that Plaintiff attended an April 9, 2014 speakers list Board meeting with a written statement he began reading about how the then supt. Brown had sanctioned fraud along with other Board employees and that certain Board members were intentionally condoning the fraud he was treated as a criminal and denied his right to speak and due process when President Nevergold shouted to Board Security "Escort him out of here!" supt. Brown then made a statement that BPS had chosen united Black mens Think Tank to Run their mentor program and work with the District. She then stated "Mr. Burgin you are welcome to work with the United mens Think Tank." Plaintiff then was escorted out of the meeting by Board security officers. See exhibit V which is the speaker list Board of Education documents dated 3-127/14 and Wednesday April 9. Plaintiff by reference incorporates exhibits U and V as if fully set forth herein.

(21)

WHEREFORE, Plaintiff respectfully request that this Court grant relief in the following:

A. Plaintiff demands Jury Trial

B. Plaintiff demands judgment against defendants herein individualy and together

C. Court consider giving this lawsuit Class action status to include Black male students attending Buffalo Public Schools and their parent/guardians

d. declaratory judgement ordering Buffalo Board of Education and Superintendent to Have District and community stakeholders put together a distinguished panel to complete impact study cost analyses which was order by Board on 6-12-13 but fraudulently halted, and that District commit to funding 5000 Real models of Excellence Project if Panel recommends replication of of the mentor program

e. order District to pay $5,000,000 (five million dollars) in money damages to Charles Burgin and stakeholder for their Wrongful deliberate indifference intentional actions described in this lawsuit Compensatory damages

f. such other and further relief as may be deemed just and proper herein.

G. award cost and attorney fees

DATED: BUFFALO, NEW YORK
04 MARCH 2015

addendum    H. $5,000,000 FIVE MILLION DOLLARS IN PUNITIVE DAMAGES

Yours, etc.
CHARLES BURGIN, PRO se

Charles Burgin

PLAINTIFF
22 BENNETT VILLAGE TERRACE
BUFFALO, N.Y. 14214