UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES BURGIN

FILED
DEC 15 2015
MICHAEL J. ROEMER, CLERK
WESTERN DISTRICT OF NY

JURY TRIAL DEMANDED

Plaintiff

BUFFALO BOARD OF EDUCATION et al

Defendants

Case No.: 15 CV 0201S

AMENDED COMPLAINT

DEFANDANT: Buffalo Board of Education;
Former Buffalo Public Schools Superintendent Pamela C. Brown;
Associate Superintendent Buffalo Public Schools Will Keresztes;
Director of Social Studies Buffalo public Schools Charles Brandy;
Interim Superintendent Buffalo Public Schools Donald A. Ogilvie;
President Buffalo Board of Education James M. Sampson;
Board of Education member Carl Paladino;
Board of Education member Lawrence Quinn;
Board of Education member Patricia Pierce;
Board of Education member Theresa Harris-Tigg;
Board of Education member Barbara Seals Nevergold;
Former Chairman and Executive Director of United Black Men's Think Tank of Buffalo,
L. Nathan Hare

1

1.) That Plaintiff availing himself of FRCP 15 (a) (1) is filing this
Amended Complaint to clariy issues related to his original complaint (filed on March 4,
2015) and to also add an additional defendant L. Nathan Hare, Chairman United Black Mens
Think Tank Of Buffalo who is not an employee of Buffalo Board of Education but played
a significant role acting in concert with Buffalo Board of Education members and employee
defendants to deprive plaintiff and a class of minority parents and their male at risk students of
their rights, as was partially detailed in plaintiff's 24 page notice of claim containing exhibits
marked 1 through 34, dated March 3, 2014 and was served upon Buffalo Board of Education, and
individual employees. See attached Notice Of Claim.

2.) That, plaintiff had timely served the notice of claim on Buffalo Board of Education (hereafter
BOE) board members and employees, who are being sued in their individual and joint capacities
under federal and state statutes.

3.) That, Buffalo Public School District and BOE receive federal funding for the provision of
free educational services and programs to at-risk impoverished minority male students who were
targeted by Buffalo Public Schools parent's group and plaintiff to be beneficiaries of a proven
mentor program "5000 Role Models of Excellence Project", and BOE was at all times subject to
various state and federal policies, regulations and laws, which were willfully violated by BOE
and employees acting in collusion with non employee L. Nathan Hare to halt the impact
study/cost analysis ordered for 5000 Role Models Of Excellence Project by Board Resolution of
6-12-13.

4.) That, plaintiff Charles Burgin herein complaining of defendants alleges as follows:

5.) That Plaintiff founded Brotherman's Progress Mentors Matter Advocacy to advocate for
empowerment of minority males who are graduating at very dismal graduation rates for various
reasons and particularly due to racial polarization of BOE, and disparate, discriminatory
educational policies implemented in BPS by BOE and Administrators. See exhibit (G) which is a
March 19, 2015 Buffalo News article about a 15 year-old Black male Buffalo Public Schools
student titled "Meet Ryan Everett, a once promising student trapped in educational despair."
"Ryan has been repeating seventh grade in the same school with the same set of teachers for the
third year in a row. He's on track to fail this year too. Ryan has been trapped in a failing school
with no way out…but he's not alone. There are hundreds , if not thousands of children like Ryan,
bright city kids who enter school eager and able to learn but who wind up trapped and lost in
school environments where they can't succeed. Poverty and low parental involvement contribute
to academic failure, but SO DO SCHOOLS THAT ARE SIMPLY ILL EQUIPPED TO TEACH
ALL THE CHILDREN THEY ENROLL." This is proof positive that 5000 Role Models Of
Excellence Project is needed in Buffalo Public Schools along with class action status for this
lawsuit due to high poverty rates, exposure of traumatic living environments,    lack of full
parental support and guidance, along with disparate educational policies derived from racial
polarization of BOE in district which is largely African American.

6.) That, plaintiff at all times herein was sanctioned by the Buffalo Public School District administrators and parents group as an empowerment advocate and official representative of at-risk minority male students who were graduating at a dismal and unacceptable rate of approximately 25%, in that he was elected as Chairman of District Parent Coordinating Council Mentor Committee of Buffalo Public Schools (hereafter BPS); and in fall of 2011 was appointed by BPS Interim Superintendent Amber Dixon and BOE Presdident Lou Petrucci, to serve on their newly created BPS Special Mentor Committee specifically tasked with creating and implementing district policies while utilizing BPS funding resources to establish a comprehensive mentor program with wrap around services to help improve the graduation rate of minority male students.

7.) That, plaintiff through research, located a proven minority male life-skills mentor program created by Congresswoman Frederica S. Wilson in 1993, which empowered Black and Hispanic male students to stay in school, graduate high school, attend college to escape generational poverty—thus he eventually accepted an offer from her to meet in Wash. D.C., and they agreed to have her program "5000 Role Models of Excellence Project" established as a chapter in BPS, as program officials would assist plaintiff with his business plan. See enclosed letter to Buffalo area Congresswoman Louise Slaughter, along with documents such as a policy brief from Partnership For The Public Good entitled "Concentrated Poverty and Public Education which help evidence the need for mentor program marked exhibit (A).

8.) That, plaintiff had sent L. Nathan Hare, Chairman of United Black Men's Think Tank of  Buffalo, an email dated 5-11-13, seeking his support for having 5000 Role Models Of Excellence Project replicated in Buffalo Public Schools "with no strings attached. See exhibit (AA).

9.) That, exhibits 27 and 28 (emails dated August 13th, 14th, and 15, 2013) of plaintiff's 3-3-14 Notice of Claim reveal the scheming, back stabbing conduct of L. Nathan Hare going behind plaintiff's back to place himself as the person whom Superintendent Pamela C. Brown would be dealing with as regarding the 5000 Role Models of Excellence Project which plaintiff had worked so hard to get the Buffalo Board of Education members to review and consider it in committee, then have the full board vote to approve the 6-12-13 resolution ordering the impact study/cost analysis. L. Nathan Hare had nothing to do with this..

10.) That, L. Nathan Hare lied in his August 15, 2013 email (exhibit 28 of Notice of Claim) to Buffalo Public Schools Superintendent Pamela C. Brown. Plaintiff had sought a meeting with her to plan things going forward concerning the 5000 Role Models of Excellence Project and was

informed by Supt. Brown's secretary that "the superintendent would only be working with one point man and that she was already set to work with Mr. Hare who had previously contacted her, and Mr. Burgin if you are in fact that point person then I suggest that you straighten things out with Mr. Hare." Plaintiff contacted L. Nathan Hare (see exhibit 28) explaining that he was out of order for trying to take over things as he was not part of the team that helped get the 6-12-13 Board Resolution passed and that Mr. Hare needed to let Supt. Brown know that he was not in charge and had no authority to be dealing with Supt. Brown concerning 5000 Role Models of Excellence Project. Mr. Hare then sent an email (exhibit 28) to Supt. Brown falsely stating "Charles Burgin is the chair person of the United Black Mens Think Tank of Buffalo Mentoring Committee." Truth being that plaintiff attended the Think Tank meetings (was never chair of any United Black Mens Think Tank Mentor Committee) and had sought Mr. Hare's support with certain work that he was doing, never at any time asking Mr. Hare to take over as if he was running things. Mr. Hare then stated via email to Supt. Brown "I would ask that Charles be the person with whom the district works to get this initiative moving. I will work through Charles and the Think Tank to do everything I can to support the success of this effort."

11.) That, exhibit # 30 of plaintiff's March 3, 2014 Notice of Claim is a copy of certified letter plaintiff mailed to Mayor Brown which was dated October 17, 2013, and reveals the ulterior motive for fraud and conspiracy of L. Nathan Hare, defendants Charles Brandy (and others) to have Mayor Brown work with them to bring Congresswoman Frederica S. Wilson (founder of 5000 Role Models of Excellence Project) to Buffalo and to take over the project from Charles Burgin and have Associate. BPS Supt. Will Keresztes sign mentor contracts with L. Nathan Hare.

12.) That, at bottom of page 3, plaintiff stated to Mayor Brown " That to date I'M still awaiting your response. That over this period of time, I was informed by Sam Radford (person who works for Executive Director L. Nathan Hare at Erie County C.A.O.) that he was aware of all the work that I had done on the 5000 Role Models of Excellence Project and that he would hate to see me left out as Councilman Demone Smith, Charles Brandy, and Nate Hare were going to connect with you (Mayor Brown) to reach out to Congresswoman Wilson and bring her to Buffalo so that they could take over the 5000 Role Models of Excellence Project—in which I simply responded that Mayor Brown

4

had already pledged his support and besides, I was already in contact
with Congresswoman Wilson and her chief of staff. Mayor Brown since
I have not heard anything from you after visiting your office three times
and also meeting with your secretary, I'm now wondering if there is
something political going on to circumvent my efforts to implement this
very important generational poverty reduction mentor program to assist
our at-risk minority males in Buffalo Public Schools to finish high
school and graduate college."

13.) That, at page 2, paragraph 8 of the October 17, 2013 letter, plaintiff
states "...I'm in process of putting together a business plan, along with a
steering committee of dedicated professional people to help get
everything that the program needs to succeed."

14.) That, plaintiff states for the record, Mayor Brown never replied to
the certified letter as he is political ally of L. Nathan Hare,
and about three weeks later defendant Charles Brandy arbitrarily
and fraudulently composed his November 12, 2013 letter to Will
Keresztes and Supt. Pamela Brown to deliberately shut down work on
the impact/study cost analysis ordered by the 6-12-13 Board Of
Education Resolution which was being done by members of the
BPS Mentor Committee and plaintiff whom was a member.

15.) That, without any consultation with other Mentor Committee
members tasked with completing the impact study/cost analysis, Charles
Brandy wrote in his fraudulent report "Mr. Burgin did not participate
in the October 12, 2013 conference call with the committee and ceased all
communications." This was an intentional lie because Mentor
Committee records reveal no such conference call was ever scheduled
for Octo6er 12, 2013. Mentor Committee records prove tltat plaintiff
did not "cease all communications." See exhibits # 21 through #24 of
plaintiff's March 3, 2014 Notice of Claim which are Mentor Committee emails
amongst plaintiff Charles Burgin, defendant Charles Brandy, and Gail Wells who
served as member of Mentor Committee doing "impact study/cost analysis ordered
by 6-12-13 Board Of Education Resolution. In addition, see materials marked exhibit
(C) which contain United Black Men's Think Tank of Buffalo minutes (concerning their
Executive Director L. Nathan Hare) along with other materials which help expose
Hare's motive for wanting to shut down the 6-12-13 impact study/cost analysis
of 5000 Role Models Of Excellence Project ordered by Buffalo Board Of Education.

16.) That, plaintiff has "standing" to bring 14th Amendment due process, equal protection claim

5

along with New York State due process, equal protection claim against Buffalo Board of
Education defendants acting in their individual and personal capacity
or jointly and severally based on facts previously annotated in his
March 3, 2014 Notice of Claim, along with documents and material facts
contained in this Amended Complaint as stated in above paragraphs and the following:

17.) That, under "Code of Conduct of New York State School Boards
Association", Buffalo Board of Education members must "Welcome and
encourage active involvement by citizens including parents and
organizations in board activities regarding establishing school policy
and developing future plans." Yet the BOE intentionally would not meet with plaintiff!

18.) That, the code of conduct states "That we have been selected by our
fellow citizens and entrusted with the authority and obligation to strive
to provide ALL STUDENTS of our communities and state with an equal
opportunity for educational excellence." That includes at-risk Black and Hispanic males who are
dropping out at an approximate rate of 75% and not graduating high school.

19.) That, the code of conduct states "that we must never neglect our
personal obligations to our communities and our LEGAL OBLIGATION to the
state." Yet the BPS defendants intentionally ignored plaintiff's efforts as a parent's advocate and
minority male student representative!

20.) That, the code states that board members have a duty to
"Communicate concerns and public reaction to board policies and
school programs to the superintendent and other board members in a
professional manner." However they illegally ignored plaintiff's requests!

21.) That, plaintiff incorporates by reference policy 2160 school district
officer and employees code of conduct into this Amended Complaint.

22.) That, plaintiff by reference incorporates paragraphs 1 through 18
of policy 2160 as if fully set forth herein.

23.) That plaintff hereby reallege and incorporates by reference paragraphs 1 through
22 as if fully set for herein.

24).That, the defendants Buffalo Board Of Education; and individual members; along with
Charles Brandy; Will keresztes; and former Supt. Pamela C. Brown; in their wrongful actions
and  (omissions) failure to act, including conspiracy, fraud, and acting in complicit manner with
L. Nathan Hare to illegaly deny plaintiff who is a Black man, and BPS minority male students

6

at-risk, their due process, equal protection rights under 14th Amendment to U.S. Constitution; and the New York State Constitution's due process, equal protection clause; and policy 2160 of New York State SchoolBoards Code of Conduct; to have a fair and honest impact study/cost analysis of the 5000 Role Models Of Excellence Project completed with integrity as ordered by BOE Resolution of 6-12-13. See exhibit (FF) which is a letter from Say Yes Executive Director David R. Rust, dated April 1, 2013, along with the actual copy of the BOE 6-12-13 Resolution ordering "impact study/cost analysis for 5000 Role Models Of Excellence Project.

25.) That, District Parent Coordinating Council minutes of September 20, 2011 reflect that plaintiff "Mr. Burgin made  motion to form a mentoring committee and Lafayette seconded it. The motion passed without opposition with Mr. Burgin as it's Chair." See exhibit (BB) which also contains a letter of support from District Parent Coordinating Council regarding plaintiff's "Petition For Non Violence And Increasing Life Skills Mentoring Programs For At-Risk Youth...the DPCC endorses this petition as a means to acknowledge the concerns of our community parents and school leaders and to hopefully point our district towards identifying means and methods to help support our at-risk youth."

26). That, plaintiff offers email dated October 28, 2011 which he sent to the Buffalo Board of Education President Lou Petrucci seeking action and support of initiatives to uplift and empower at-risk black male students who had a totally unacceptable graduation rate of 25%. See exhibit (CC).

27.) That board president Lou Petrucci responded to plaintiff by letter dated December 11, 2011, expressing his concern "With respect to the achievements of males of African descent in Buffalo Public Schools we are not where anyone wants to be...I have also been informed that you have been recently appointed to the newly established Mentoring Committee chaired by Charles Brandy...we have established the aforementioned mentoring committee to establish policies, practices...the Buffalo Public Schools need to have a well articulated policy that both provides access to mentoring programs and ensure the safety and well being of our students..." See exhibit (DD)

28.) That, plaintiff's work on the Mentoring Committee along with some thorough research revealed a proven effective mentor program 5000 role models of Excellence Project which uplifted and empowered at-risk

7

Black male students attending Miami-Dade Public Schools to graduate high school and attend college thus helping Black families to escape generational poverty.

29.) That, plaintiff contacted Executive Director Tammy Reed who responded by letter dated February 5, 2013, "It was a pleasure speaking with you. As promised attached is information regarding the 5000 Role Models of excellence Project. I wish you success in your efforts to establish and build a mentoring program that positively impacts the lives of our children." See exhibit (EE)

30.) That, plaintiff sought the support of "SAY YES" Organization as to working with him to help provide counseling and other academic (scholarship) related assistance and services for Black male students who would be enrolled in the Buffalo Chapter of 5000 Role Models of Excellence Project.

31.) That, "Say Yes" Executive Director David Rust responded to plaintiff by letter dated April 1, 2013, "As such we will endorse and partner with organizations that demonstrate best practices and evidence-based principles of mentoring designed to encourage youth to be confident..." See exhibit (FF) which also contains a copy of the actual 6-12-13 board resolution which was passed by board and the last paragraph states "Be it resolved that the Board of Education calls upon the Superintendent to conduct an impact study with a cost analysis and emphasis on the potential combined effect with current district academic and intervention programs like Say Yes in an effort to blend academic intervention and adult mentoring as a strategy for enhancing outcomes for elementary and high school students."

32.) That, plaintiff sent a letter dated May 15, 2013, to Buffalo board of Education Committee member Ralph Hernandez seeking a board resolution in support of our "Non Violence Pro Mentor/5000 Role Models of Excellence Project initiative...made on behalf of our at-risk, marginalized minority students, parents, the community at large, and especially the many youth who are living in fear for their lives. This extensive material evidencing the need for the above resolution in support of our initiative can possibly be summed up by the BOE Committee and full body reading the enclosed copy of an email which I sent to BOE member John Licata, dated May 17, 2011. See exhibit (GG) which contains plaintiff's May 17, 2011 email to John Licata and also

includes plaintiff's may 15, 2013 letter to board member Ralph
Hernandez which is of relevance.

33.) That, plaintiff's May 17, 2011 email to John Licata (at exhibit GG)
states in part that he's seeking board member John Licata's support as
to improving the overall functioning of the schools and improving the
dismal graduation rate of 25% for Black male students. my point Mr.
Licata is that long term mentors can and do make a difference in young
person's life and can influence the decisions that the young students
make...we have support of at least 1,000 concerned individuals who
have signed our Non Violence Pro Mentor of Life Skills Foundation For
At-Risk Youth petition. ...finally Mr. Licata, I'm sure that you agree
that if you have exponentially increased the amount of dedicated ,
qualified Black male mentors and counselors working in the schools to
stabilize and uplift those youth at-risk then the entire learning
environment improves."

34.) That, by email dated June 7, 2013, plaintiff contacted board
members Lou Petrucci and Ralph Hernandez regarding the upcoming
board resolution and institutional racism as plaintiff' stated "I expect to
have an up or down vote this coming Wednesday on behalf of our young
minority males who have been disparately educated for decades...one
has to look at the implications of racist policies over the past few
decades and how it negatively impacted minority students... it's time
that the BOE understand that they work for the benefit of ALL the
students who are entitled to high academic achievement—not just the
cream of the crop." See exhibit (HH).

35.) That by letter dated 6-12-13, Congresswoman Frederica S. Wilson
of 5000 Role Models of Excellence Project placed Buffalo Board of
Education on notice that "our drop-out rate has decreased
phenomenally since inception of the program. Principals, teachers and
parents sing praises of the results and the students are proud to be
associated with this extremely successful program...in Congress, I'm
working to bring this important initiative to a national scale. If this
resolution is passed, I would be delighted to come to Buffalo to help
move this essential initiative forward." See exhibit (ii).

36.) That, plaintiff sent an email dated 6-13-13 to board members Ralph
Hernandez and Lou Petrucci, sponsors of the 6-12-13 board resolution,
thanking them and stating '*I will also be contacting Supt. Brown just to

9

make sure she received a copy of the letter which was sent to the board from Congresswoman Frederica S. Wilson and that she has read the full contents...I just want to get Supt. Brown's overall feelings about Congresswoman Wilson's offer to come to Buffalo, if the resolution passed. That way, supt. Brown and I can be on the same page in strategizing how to make everything come together for the benefit of our students, their families and the greater community."

37.) That, by email dated June 21, 2013, board member Lou Petrucci responded stating "Mr. Burgin...the second part of the resolution is now for you to formulate a BUSINESS PLAN for your mentoring program. As a board member I do write the specs, I can tell you what I have seen come across my desk over the years and the general questions that may be asked. Number of schools—number of children that you can serve in each school-outcome over a specified time period. For example, we plan on mentoring 50 young males of African descent in ten schools with a goal of improving attendance, suspension, ELA, math, graduation rates etc. by so many percentage points over a specified time period. How are mentors selected. Mentor training. Partnerships with other groups. Cost. Reporting—how often are you going to report out your results-quarterly, biannual, annual? ANYTHING THAT WE CAN DO TO IMPROVE AFRICAN AND HISPANIC MALE GRADUATION RATES SHOULD BE EXPLORED. If IT WORKS IN FLORIDA, HOPEFULLY IT WILL WORK HERE IN BUFFALO." See exhibit (JJ) which also includes a page from the 6-12-13 Buffalo Board of Education minutes which evidence the resolution as overwhelmingly passed.

38.) That, newly elected Buffalo Board of Education President Barbara Nevergold responded to plaintiff's request that she support the 5000 Role Models of Excellence Project by sending him an email dated July 8, 2013 which stated "As you know the board supported the resolution regarding YOUR PROGRAM and staff were instructed to conduct a cost analysis. I will support the board's resolution and I suggest that you use this as support by the board for the program." See exhibit (KK).

39.) That, by letter dated August 13, 2013, Ellicott District Councilmember Darius Pridgen supported the 5,000 role Models of Excellence Project initiative stating it would "increase the high school and college graduation rates of minority males in the Buffalo Public School s system. This program will add DIVERSITY into the multiple programs available to our youth...I would SERVE in an ADVISORY

CAPACITY as needed." See exhibit (LL)

40.) That, via letter dated August 26, 2013, Congresswoman Frederica S. Wilson, founder of 5000 Role Models of Excellence Project invited plaintiff to attend a Congressional Black Caucus Educational Forum while serving as honorary host. A contingent of 5000 Role Models of Excellence Project staff and officers would be there along with forty boys who attend the Miami-Dade County Public School system as plaintiff could meet and discuss relevant business matters pertaining to the establishment of the Buffalo Chapter of 5,000 Role Models of Excellence Project. See exhibit (MM).

41.) That, plaintiff accepted the offer to attend the educational forum and made important contacts within the organization as he was offered support in establishing the Buffalo Chapter of 5000 Role Models of Excellence Project in Buffalo Public Schools. Of particular significance a pledge of support from Congresswoman Frederica S. Wilson's son Paul Wilson "It was indeed a pleasure making your acquaintance this past week in Wash. D.C. for the ALC Conference. I hope that we connect and do some great work in our respected communities on behalf of our children. If there is anything that I can do to assist you, please do not hesitate to ask. P.S. WE ARE GOING TO GET ThIS 5000 ROLE MODELS OFF THE GROUND IN BUFFALO. I CAN'T WAIT!" See exhibit (n n) which is an email letter from Paul Wilson dated Sept. 23, 2013.

42) That, via email dated September 6, 2013, Tracy Cooley, a member of the Mentor Committee working with defendant Charles Brandy and others to do the board ordered impact study/cost analysis of 5000 Role Models of Excellence Project offered to help plaintiff with his BUSINESS PLAN, stating "In order to bring a program to fruition, you have to begin to plan by creating a team that can help develop the implementation plan and BUSINESS PLAN. The program already exists, now you need to brainstorm on all the pieces you need to make a program happen." See exhibit (OO).

43,) That, via email dated September 11, 2013, plaintiff sought the support of Buffalo Board of Education member Dr. Harris-Tigg stating "For now. Dr. Harris-Tigg, I'm simply asking that Dr. Nevergold as President of the Buffalo Board of Education and Dr. Brown as Superintendent of BPS, send a letter of response to Congresswoman Wilson inviting her to Buffalo at her convenience to help move the

mentor program project initiative forward. I'm still working on the
BUSINESS PLAN aspect and the BPS Mentor Committee is still
working on the impact study etc. see exhibit (pp).

44.) That, via email dated Sept. 26, 2013, plaintiff explained to East
High School Principal Dr. Young, his successful trip to Wash. D.C.
regarding 5000 Role Models of Excellence Project. Dr. Young replied via
email dated September 20, 2013, "East High is very interested in being a
part of 5000 Role Models of Excellence Project." See exhibit (r r) which
is a copy of both emails.

45.) That, as previously annotated in plaintiff's March 3, 2014 Notice of
Claim,  plaintiff revealed how defendant Charles Brandy had fraudulently conspired
with L. Nathan Hare in composing his arbitrary report of November 12,
2013, which was sanctioned by defendants Will keresztes and conspiratorily given
to Pamela C. Brown, falsely stating that plaintiff failed to
produce program materials during a bogus October 12, 2013 telephone
conference call and then "ceased all communications" with the Mentor
Committee which was tasked with doing the impact study/cost analysis
ordered by board on 6-12-13. See exhibit (s s).

46.) That, plaintiff had objected to the arbitrarily prepared (and
intentionally false) report of November 12, 2013 that defendant Charles
Brandy had prepared, and plaintiff then had a December 4, 2013 meeting with
Supt. Pamela C. Brown who refused to accept any of his written material documents evidence
which proved that Charles Brandy had intentionally falsified his report
on behalf of L. Nathan Hare, which was sanctioned by Will keresztes,
and then when asked by plaintiff why she (Supt. Pamela C. Brown) had not sent the previously
agreed upon letter to Congresswoman Frederica S. Wilson, accepting
her invitation to "come to Buffalo to help move this important initiative
forward"--Supt. Brown shockingly replied "How do you know that I
wanted that woman to come here in the first place." See 12-4-13 email attached to exhibit (SS)
along with a Jan 20, 2015 letter from BOE member Carl Paladino who states Supt. Pamela C.
Brown "was hired by an African American majority of the BOE at the time who were more
interested in having a superintendent they could control and protecting their power over jobs and
monies than they were concerned with the education of 34,000 kids. The superintendent was so
inept that they found it necessary to hire a $450,000/yr consultant to guide her. That BOE
majority wanted her to get on the job training showing no concern for the suffering of 34,000
children in a dysfunctional system which had a 9% proficiency in math and 11% proficiency in
English with an actual graduation rate under 50% including many students pushed through to
raise the numbers." Plaintiff incorporates this letter into his Amended Complaint as evidence to

bolster his legal claims and assertions regarding Superintendent Pamela C. Brown and the BOE..

47.) That, as a result of their conspiracy and fraud, L. Nathan Hare was
subsequently able to sign a mentor related contract with Will Keresztes
giving him control over all mentor related programs and policies in
Buffalo Public Schools, as the Mentor Committee created by Interim
Supt. Amber Dixon and board member Lou Petrucci, which plaintiff
had served on for approx. 2 years, was to his knowledge disbanded, or
is now being controlled by L. Nathan Hare, Executive Director of Erie
County C.A.O., who  no longer has a relationship with the
United Black Men's Think Tank of Buffalo—after leaving the
organization and taking their mentor related project with him to ECCAO. See exhibit (H) which
is a series of six emails (which plaintiff fully incorporates by reference) between L. Nathan Hare
and United Black Men's Think Tank Of Buffalo that evidence Hare's motives to conspire to shut
down Board ordered 6-12-13 Resolution pertaining to impact study/cost analysis for 5000 Role
Models Of Excellence Project..

48.) That, plaintiff had written a five page letter to Paul Wilson (son of
Congresswoman Frederica S. Wilson) who had pledged his support for
5000 Role Models of Excellence Project. "Well Paul, I was nobody's
fool as I knew that the only body which could overrule the fraud
perpetrated against us was the full body of Buffalo Board of Education.
I reached out to them but the new board had not yet been elected, so I
simply filed a legal Notice of Claim on behalf of myself and all minority
males who would have benefited from the 5000 Role Models of
Excellence Project being replicated in Buffalo Public Schools. This
would protect our interest should the board not agree to timely rectify
the fraud perpetuated against us by Supt. Pamela C. Brown and board
employees." See exhibit (t t) which is copy of letter to Paul Wilson.

49.) That plaintiff hereby realleges and incorporates by reference paragraphs 1 through 48
As if fully set forth herein:

50.) That, defendants L. Nathan Hare, Charles Brandy, Will Keresztes and Supt. Pamela
C. Brown's actions were sanctioned and condoned by the Buffalo Board
of Education and by individual board members Carl Paladino;
Lawrence Quinn; Patricia Pierce; James Sampson; Dr. Barbara
Nevergold; and Dr. Theresa Harris-Tigg; Donald Ogilvie; acting
to deny Black plaintiff, and minority parents of at-risk male
students attending Buffalo Public Schools—their rights to establish a proven mentor program for
Black and Hispanic at-risk male students that helps them stay in school, graduate and attend

13

college--the 5000 Role Models of Excellence Project.

51.) That, plaintiff submit's a list of concerned parents and community
stakeholders who demanded that Buffalo Board of Education members
meet with him and parents of students who would have benefited from
5,000 Role Models of Excellence Project, and stakeholders, to discuss their
Notice of Claim filed 3-3-14. The defendant Buffalo Board of Education, and individual board
members intentionally ignored plaintiff who was acting as representative of himself,
parents and stakeholders--by refusing to meet with him or them. See exhibit (u u).

52.) That, plaintiff states the actions engaged in by the defendants herein violated plaintiff's (and
parents of Black and Hispanic at-risk male students attending Buffalo Public Schools)
 rights, under U.S. Constitution's 1st. and 14th Amendments, as pertaining to 42 U.S.C. 1983;
including Article 1, sections 8 and 11 of New York State Constitution freedom of speech law; and
42 U.S. C. Title VI 2000d, 2000 d1 (section 601); while acting under color of state law in their
official and individual personal capacity, conspiring to deny plaintiff the opportunity to contract
and complete plaintiff's business plan for bringing 5000 Role Models of Excellence Project to
BPS as Buffalo Chapter--by sanctioning malicious, wrongful deliberate illegal actions of the
defendants which shut down the 6-12-13 board ordered impact study/cost analysis for 5000 Role
Models Of Excellence Project.

53.) That, defendants acted with deliberate indifference to deny plaintiff an opportunity to be
heard at a BOE "speakers list" meeting held April 9, 2014, when he started to let the public and
T.V. audience know how the Superintendent, board employees and individual board members
were violating the rights of plaintiff, Black and Hispanic parents of at-risk students and
stakeholders, when Board PresidentNevergold shouted to security "GET HIM OUT OF
HERE!" Plaintiff was escorted from board meeting by board security officer under a policy and
custom of not publicly letting anyone speak out againt any named board member or the
superintendent who have aggrieved them. Plaintiff was then purposely ignored in all his written
requests for a meeting to meet with Board to discuss discriminatory grievances by himself, parents
of at-risk Black and Hispanic male students, and community stakeholders.   See exhibit (B) which
is a copy of 4-9-14 meeting.

54.) That, plaintiff reaffirms and re alleges the allegations in paragraphs
1 through 53 as if fully set forth herein .

55.) That, plaintiff incorporates policy 3170 "Parent Involvement
Policy" of Buffalo Public Schools as if fully set forth herein. See exhibit
(vv).

56.) That, Policy 3170 states "The board of education charges the school

district's staff and parents with the development, implementation
monitoring and regular evaluation of a district wide and individual
school parent engagement program as required under federal law,
including section lllS of the Elementary and Secondary Education Act (ESEA)
and NYSED regulation 100.11 related to shared-decision making these
programs, activities, and procedures will be planned and operated with
meaningful consultant of parents in each school."

57.) That, policy 3170 further states "Speaking up for every child-
families are empowered to be advocates for their own and other
children, to ensure that students are treated fairly and have access to
learning opportunities that will support their success."

58.) That, Policy 3170 further states "Sharing power in decisions that
affect children and families and together inform, influence, and create,
policies, practices, and programs."

59.) That, as to district responsibilities/expectation, policy 3170 states
"To successfully implement the district's beliefs in parent involvement,
support will be comprised of, but not limited to the following: 1.)
insuring compliance with section 1118 (parent involvement) the
Elementary and Secondary Education Act (ESEA) / Title 1
requirements and NYSED regulation 100.11 related to shared decision
making; BY PROVIDING OPPORTUNITIES FOR PARENTS TO
PROVIDE INPUT INTO DEVELOPMENT OF ALL STATE AND
FEDERAL PROGRAMS (i.e.) TITLE 1 CONSOLIDATED
APPLICATIONS, CONTRACT FOR EXCELLENCE."

60.) That, Policy 3170 also states "The Buffalo Board of Education
recognizes the value of parents as critical stakeholders to inform the
governance of the school district. As an essential voice of the Board of
Education a parent representative will serve as a reminder of the core
mission of the district TO ALWAYS PUT STUDENT AND PARENT
INTENT AHEAD OF ALL OTHER CONSIDERATIONS."

61.) That, plaintiff claims defendants   L. Nathan Hare, Charles Brandy, Will Keresztes,
Pamela C. Brown, Donald Ogilvie, the Buffalo Board of Education;
Board members Paladino, Sampson, Quinn, Pierce, Harris-Tigg, and
Nevergold acting individually and together with deliberate
indifference concerning rights of Black plaintiff and minority parents of at-risk
male students seeking to have impact study/cost analysis completed for 5000

Role Models of Excellence Project, willfully and intentionally violated New York State
Education Department Policy 3170, and the shared decision making regulation 100.11; along
with section 1118, 111S and Title I of Elementary And Secondary Act (ESEA); including New
York State Conspiracy Law, in that defendant's willful, wanton and conspiratorial acts and
omissions, gross negligence, conscious indifference, and utter disregard for rights of plaintiff and
Black and Hispanic parents of at-risk male students,--violated their rights to enter into a contract
with 5000 Role Models Of Excellence Project, and fraudulently prevented plaintiff from
presenting his business plan to BPS administrator and Buffalo Board Of Education, upon the
completion of a fair and honest Board ordered 6-12-13 impact study/cost analysis, which
defendants willfully conspired to sabotage.

62.) That, in support of his allegations and legal claims, plaintiff references
additional factual material documents and exhibits of importance and incorporates them into this
Amended Complaint as annotated below:

63.) That, plaintiff references  exhibit (D) which is an August 1, 2014 letter to interim
Superintendent Donald Ogilvie; exhibit (E), an August 4,2014 leter to
board President Sampson; exhibit (F) an October 8, 2014 letter to
Board members Lawrence Quinn and Patricia Pierce.

64.) That, the defendants were on notice about plaintiff having to file a Notice of Claim dated
March 3, 2014 related to the conspiratorial and fraudulent actions of
Charles Brandy and Will Keresztes and the deliberate indifference of
Supt Pamela C. Brown who had a duty under federal and state laws to
examine the material proof that plaintiff had gathered and presented to
her in her office on December 4, 2013 and had an additional duty to
have an investigation done concerning this serious matter—but intentionally
ignored plaintiff, parents and stakeholders.

65.) That, the individual board defendants and the board as a body had an
obligation to meet with plaintiff as parent's representative because he
was the person responsible for putting together business plan for 5000 Role Models of Excellence
 Project, as impact study/cost analysis could not have been completed without it—had
not the impact study/cost analysis ordered by the board on 6-12-13—been fraudently halted by
defendants. See exhibit (i) which plaintiff incorporates by reference as if fully set forth herein,
which, is a 2 page email dated June 2, 2014 from Vice Chairman Hosie Arnold of United Black
Men's Think Tank of Buffalo, (as defendant L. Nathan Hare was serving as Chairman of United
Black Men's Think Tank Of Buffalo) which evidences the relationship among L. Nathan Hare,
BPS Superintendent Pamela C. Brown and then Board President Barbara Seals Nevergold. Vice
Chairman Hosie Arnold stated "This 'conversation' with the superintendent should prove to be
very informative and in light of the fact that she and current school board President, Dr. Barbara

Seals-Nevergold attended our dinner party fundraiser last February 22nd and assisted us in moving our mentoring project forward with the Buffalo Schools…"

66.) That, plaintiff seeking redress from BOE had timely submitted the following:

—an August 1, 2014 letter to board member Carl paladino

—an August 1,2014 letter to board member Dr. Harris-Tigg

—an August 4, 2014 letter to board member Dr. Nevergoldexhibit. See exhibit (QQ).

67.) That, each of these letters notified these board members of the
Notice of Claim which had been filed, and that plaintiff, parents of at-risk minority males, and stakeholders, sought a meeting with them to discuss the fraudulent conduct of board employees Pamela C. Brown, Charles Brandy, and Will Keresztes—which they as individuals and part of the Board had a legal duty to meet with plaintiff, acting as parent and student advocate, and to investigate the conduct of such employees as regarding the impact study/
cost analysis. See very relevant exhibit (qq) of this Amended Complaint, along with
two other emails, one dated December 20, 2013 which plaintiff had sent
to Board member Dr. Harris-Tigg which requested urgent meeting to
discuss fraudulent conduct of defendants. The second email dated
September 9, 2013 was sent to defendant board member Carl Paladino
and board member Dr. harris-Tigg which notified that "We students,
parents and community stakeholders WILL NOT BE DENIED OUR
DUE PROCESS RIGHTS and urge that you immediately contact
Charles Burgin to schedule a meeting to discuss a proper resolution of
our grievances." Plaintiff also attaches to exhibit (QQ) and incorporates in it's entirety, a
document which is the April 29, 2015 minutes of BOE meeting, whereby board member Dr.
Nevergold is chastizing Interim Superintendent Donald A. Ogilvie "You are responding to us
while there are five board members that are silent. It is not your job to respond to us about the
search or the nature of the search because that is not your job. It is the job of the nine board
members… it is not your job to explain why they have not followed the process as they should.
Again, you do respond as the employee. THE ONLY EMPLOYEE THE BOARD HAS IS THE
SUPERINTENDENT and so I would, again, reiterate and you should not and I understand you
are feeling awkward and you are definite caught between the rock and the hard place here but at
the same time I would say you need to step back." "Interim Superintendent thanked Dr.
Nevergold." Plaintiff states that certainly this document proves that the board had a duty,
responsibility and power to meet with him to discuss his claims of fraud being perpretrated
against him, parents of minority at-risk students and the district—by Superintendent Pamela C.
Brown and her underlings, Charles Brandy and Will Keresztes.

68.) That, plaintiff refers to issues of integrity and character
regarding L. Nathan Hare, and Associate Superintendent Will Keresztes
who at one point became Interim Superintendent of Buffalo Public Schools

and witheld support for parents and stakeholders initiative whereby he
discriminated against them when they were trying to utilize Title 1 funds to start
Summer and after school program for at-risk minority male students,
As Will Keresztes (with approval of board) supposedly came up with
almost a million dollars from the school budget to match funds for a
Wegman's run program in Buffalo Public Schools which is run by a
White Corporation and does not fill the need for cultural diversity programs aimed to uplift
and empower at-risk minority males which plaintiff, parents and stakeholders sought.

69.) That, plaintiff hereby realleges and incorporates by reference paragraphs 1 through 69 as if
fully set forth herein.

70.) That the above defendants committed fraud and Plaintiff offers the following information,
factual documents and material exhibits to bolster his legal claim of Fraud against the
defendants under New York State Law; as well as to exert claims under New York State Law
for Tortious Interference With A Prospective Business Economic Relationship; and Tortious
Interference With Business Relations:

--Information that defendant L. Nathan Hare being motivated by malice, acting in concert with
intent, fraudulently conspired with district eemployees Charles Brandy and Will Keresztes to
sabotage the 6-12-13 board ordered impact study/ cost analysis because he viewed plaintiff's
establishment of 5000 Role Models Of Excellenc Project as competition for his own Buffalo
Mentoring Initiative with United Black Men's Think Tank of Buffalo, and competition for the
contracts he eventually signed with defendant Will Keresztes relating to the establishment and
control of mentor programs and policies which he wanted to oversee in BPS District. The record
also reflects that defendant L. Nathan Hare schemed to take over plans of plaintiff to bring 5000
Role Models Of Excellence Project to BPS by going straight to Superintendent Pamela C.
Brown behind plaintiff's back, and he also sought help from his political ally Mayor Brown to
have him bring Congresswoman Frederica S. Wilson to Buffalo whereby he would be in control
of everything as Executive Director of Erie County Community Action Organization, where he
has now taken the mentor program project formerly created by United Black Men's Think Tank
Organization—which now has nothing to do with L. Nathan Hare as revealed by documents in
this lawsuit. See exhibit (yy) which is a July 17, 2014 email from Hosie Arnold Vice Chairman
of United Black Men's Think Tank of Buffalo which reads "Mr. Hare: Due to your recent
actions which have been determined to be unbecoming of a professional and a gentleman, your
membership in the United Black men's Think Tank of Buffalo has been rescinded effective
immediately…"

--Information that plaintiff had a conversation with one of the Mentor Committee members
tasked with doing the board ordered 6-12-13 impact study/cost analysis, as she was also
associated with L. Nathan Hare and the United Black Men's Think Tank. Plaintiff asked her

what she knew about the arbitrary shutting down of the impact study/cost analysis, and she replied that "Mr. Nate Hare says you (plaintiff) were moving too slow with the 5000 Role Models Of Excellence Project."

—A November 22, 2013 5 page letter sent to Pamiela C. Brown seeking
redress of defendant Charles Brandy's fraudulent report of November
12, 2013. See exhibit (WW).

~-A November 27, 2013 email sent by Supt. Brown seeking a December 4,
2013 meeting and plaintiffs' reply of November 30, 2013, accepting the
meeting while stating "'in terms of full transparency it is imperative that
I immediately receive a copy of the so-called impact study cost analysis
bogus report submitted by Charles Brandy to Supt. Brown without my participation or
knowledge." See exhibit (WW).

~A December 3, 2013 email sent by Supt. Brown to plaintiff which states
"please see the 'committee's report' attached. I look forward to meeting
with you tomorrow." Note that Supt. Brown has termed Charles
Brandy's fraudulent and arbitrary report as the 'committee's report'
which sanctions the conspiratorial conduct of Charles Brandy, Will
Keresztes and L. Nathan Hare--in light of the fact no other member of
the Mentor Committee tasked with completing the 6-12-13 Board Resolution
took part in drafting the report which just so happens to coincide with
L. Nathan Hare's move to start his own community mentor movement utilizing a group he
chaired as Executive Director, United Black Men's Think Tank of Buffalo and
Schemed to receive a mentor related contract with his crony Will Keresztes and Buffalo
Public Schools; only later to ditch the United Black Men's Think Tank
of Buffalo and take it's mentor project movement for his own Erie
County C.A.O. which he serves as Executive Director. See exhibit (WW).

—An October 26, 2013 email from L. Nathan Hare, then serving as

Chairman of United Black Men's Think Tank of Buffalo. He then puts
out a press release "...establish a method of working together with these
groups and the Buffalo Board of Education to build a broad base of
mentoring initiatives which combines volunteer and institutional
support systems." Coincidence? This is exactly what plaintiff was
doing with his Steering Committee to galvanize the community to work
with Congresswoman Wilson founder of 5000 Role Models Of Excellence Project
when she came to Buffalo. Now consider L. Nathan Hare's August 2013 email
to Supt. Brown, whereby he pledged to "work with "Charles and do everything
in his power to make the 5000 Role Models Of Excellence Project a success."
 Mr. Hare's press release further states"please join us at our 'Developing a Meaningful
Mentoring Initiative meeting set for Saturday NOVEMBER 9, 2013."
Note that this is only three days before Charles Brandy submits his arbitrary and fraudulent
report of November 12, 2013, effectively shutting down the impact
study/ cost analysis for 5000 Role Models of Excellence Project which
the board ordered on June 12, 2013. See exhibit (WW).

—An outline copy of email sent from defendant Charles Brandy which
states " our conference call schedule for 4:00PM on Friday, October 11,
2013." Note in his fraudulent report of November 12, 2013. Defendant
Charles Brandy falsely stated that there was an October 12, 2013
conference call in which "Mr. Burgin did not participate in the October
conference call with committee and ceased all communication.
Recommendation of The 5000 Role Models of Excellence Project
Mentoring program is not recommended for implementing in the
Buffalo Public Schools in a limited or full capacity at this time. Specifics
of the core components remain unknown." " CC Mentoring Committee
File." Note that no other Mentor Committee member (including plaintiff)
tasked with doing the impact study cost analysis had anything to do
with preparing the said report! In addition other committee members were sent a
copy on December 3, 2013, one day before plaintiff's meeting with
Superintendent Brown. See exhibit (WW).

—An email dated October 11, 2013 at 3:39 A.M. sent by plaintiff to
committee member Gail Wells regarding the scheduled October 11, 2013
4:00 P.M. conference call with Charles Brandy and other committee
members to discuss business of committee. Plaintiff states "Gail, hold
on...Instead of holding a conference call today, I find it imperative that
we meet to discuss the BPS mentoring Initiative and 'Gail's'
understanding furthermore, I am still in the process of putting together
the steering committee, which will be addressing the major issues and

concerns with implementing The 5000 Role Models of Excellence
Project in BPS..." See exhibit (WW).

- An email dated October 11, 2013 at 1:57 P.M. committee member Gail
Wells' reply to plaintiff "everyone who called in for the conference call
felt the conference call should be cancelled and AS PER YOUR
SUGGESTION BE REPLACED WITH A MEETING A meeting time
was identified therefore we need to know if you are available to meet
next Friday on October 18th at 11:00A.M...if this is not convenient for
you please provide another time when you are available as we feel we
cannot proceed without your input." See exhibit (WW).

~ An October 14, 2013 email sent from plaintiff to Gail Wells " this is to
inform that I am not available for the 18th of October. I will be available
for a meeting on Friday the 25*" after 1:30 P.M.... we should also discuss
for the record how the steering committee which I'm putting together to
advance the objectives and implementations of The 5000 role Models of
Excellence Project; which cannot be performed until after my business
plan and budget has been perfected, along with other pertinent
concerns and time lines." Note that defendant Charles Brandy
fraudulently claimed in his November 12, 2013 report that Plaintiff
(Charles Burgin) " had ceased all communications" after failing to
attend the bogus October 12, 2013 conference call." Again note that this
email dated October 14, 2013 IS ONLY two days after the bogus October 12,
2013 conference call—there was no ceasing of all communications by plaintiff! See exhibit
(WW).

—An email dated October 23, 2013 from committee member Gail Wells.
For the record, plaintiff had spoken by phone with committee member
Gail Wells and she had informed that she could not meet with him on
his requested dates " from the 28th through 31st of October after
1:30pm," as she would be leaving town for a visit to Baltimore and that
next committee meeting could be scheduled after she returned, as
everyone could then review their schedules and come up with an
acceptable date to meet. Gail Wells sent email dated October 23, 2013
to committee members that included plaintiff Charles Burgin and
defendant Charles brandy—"Dear team, I am leaving for Baltimore
tomorrow morning, but I have attached an article that was sent to me
by a national Black Think Tank which I belong to. Please read it and
send comments." Again, this is evidence that plaintiff Charles Burgin
had not "ceased all communications" with mentor committee tasked

with doing the Impact Study Cost Analysis. See exhibit (WW).

— An email dated October 24, 2013, from defendant Charles Brandy
replying to committee member Gail Wells October 23, 2013 email that
she was leaving for Baltimore. He simply replied to committee member
Gail Wells' October 23, 2013 email, by stating " Thank you." Note that
Plaintiff Charles Burgin was also sent this reply. See plaintiff email
address on Charles Brandy's email address bar, which is
"bromaninc@gmail.com." This is further evidence that plaintiff,
(committee member) Charles Burgin had not "ceased all
communications" after supposedly failing to address mentor committee
members during non existent bogus "October 12, 2013" conference call, as
defendant Charles Brandy had intentionally and fraudulently lied to
further assist Unite Black Men's Think Tank Chairmen L. Nathan Hare
in this conspiracy to contract with Buffalo Public School District
Director of Student Services, Will Keresztes in order to gain control of
mentor program policies, practices, and procedures in Buffalo Public
Schools, as outlined in plaintiff's notice of claim and Amended Complaint.. See exhibit (WW).

— An email dated December 6, 2013 from Mentor Committee member
Tracy Cooley who was also tasked with helping to complete the board
ordered June 12 ,2013 impact study cost analysis. She states "... I received
the mentor report on December 3, 2013. 1 am not sure if anyone else
received the report." Note for the record, defendant Charles Brandy
fraudulently and unilaterally prepared his report of November 12, 2013
and kept it from any other committee members as Tracy Cooley did not
receive hers until the same December 3, 2013 date that defendant
Charles Brandy presented plaintiff with a copy via email to his boss,
defendant Pamela C. Brown. Further note, if everything was true in his
November 12, 2013 report, then Charles Brandy would have had input
from other committee members as they too would not have received their
copies some 21 days later— only because plaintiff had demanded that
defendant Superintendent Pamela C. Brown, give him a copy of
Brandy's fraudulent report of November 12, 2013. See exhibit (WW).

— A December 7, 2013 email sent from plaintiff Charles Burgin to
committee member Gail Wells entitled "BOGUS BPS MENTOR
REPORT OF NOVENBER 12, 2013 DONE BY CHARLES BRANDY."
The email stated "Hello Gail... I will keep it simple and straight with
you. Do you want to set the record straight as to the truth of matter

evidenced by emails and our discussions. Please let me know if Mr.
Brandy has given you a copy of the report, and if so, when did you
receive it, including how. 1 would also like to discuss with you all
matters pertaining to the BPS Mentor Committee meeting since we last
sat at the meeting table on October 10, 2013 after the other members
had left. Of course you are now aware that Dr. Keresztes and Charles
Brandy will be doing business with those people who started "The
Buffalo Mentor Initiative" only they have changed the name. Just
coincidence? And in any event, I just want to know where you stand as to
the truth of the matter, as I await your reply." Plaintiff states that this is
a full page email and he incorporated the full body as evidence. Again
for the record. Gall Wells responded via email dated December 10, 2013,
stating "I would prefer to speak with you in person, my contact number
is ..." See exhibit (WW).

— A page titled "United Black Men's Think Tank minutes by Chairmen
L. Nathan Hare" reveals collusion. It further states "mentoring initiative update
December 6, 2013 meeting with Dr. Keresztes... Dr. Keresztes working
through the district's mentoring structure lead by Charles (Woody)
Brandy will provide our mentoring collaboration access to Buffalo
Public Schools forums and spaces to enable recruitment of children...
Dr, Keresztes will utilize his administration's apparatus to datamine
participant schools, site behaviors, and academic performance... The
CAO will create an add-on to its website for mentoring initiatives..."
Note for the record, all of the above reference emails have been marked
as exhibit (WW).

Further note for the record, plaintiff is incorporating the full body of the
following documents (which consists of minutes and emails) into his
Amended Complaint as evidence of the defendants fraudulent and
conspiratorial conduct waged against plaintiff which are marked (XX.)

—An Untited Black Mens Think Tank minutes of July 20, 2013
mentioning a "letter of support sent to Dr. Brown (see XX.)

— An email dated August 8, 2013 sent by plaintiff to Congresswomen
Wilson's Chief of Staff Alexis Snyder " but due to fraudulent actions on
behalf of the committee chair and assistant superintendent; they claim
that the full committee have recommended that we go with the model
program of Big Brother Big Sisters which have received a million dollars in grant funding.

So beware of sell-outs who simply want to control things...See exhibit (XX).

- A set of emails dated August 21, 2013 which evidences how
Superintendent Brown had allowed Dr. Will Keresztes to be in charge of
the Board ordered 6-12-13 impact study cost analysis and that he delegated
to Charles Brandy the duty to help conduct it along with members of Buffalo Public School
Mentor Committee originally created by Interim Superintendent Amber Dixon and BOE
President Lou Petrucci in fall of 2011. See exhibit (XX).

~ A Three page email dated September 3, 2013 which was sent to defendant
Pamela C. Brown from plaintiff that outlines the prior negative
conduct of Charles Brandy and Will Keresztes while working in the past years
on the Mentor Committee, and why it would be a conflict of interest for them
to conduct the impact study cost analysis —but Superintendent Brown
simply ignored plaintiff's email of September 3, 2013. See exhibit (XX).

— An email dated March 22, 2013 sent by Plaintiff to Will Keresztes
informing that he would be insisting that the rights of parents and
stake holders be upheld as regarding the types of mentor programs the
committee would select to empower at risk black male students as to
their history, culture, and need for life skills foundation along with
academic support. See exhibit (XX).

~ A three page email dated June 27, 2013 which plaintiff sent to former
mentor committee member Dr. Jerome Watts. "Dr. Keresztes even
suggested that if I wanted to deal with The 5000 Roles Models of
Excellence Project, maybe I could collaborate with one of the organizations
which had been officially selected by BPS Mentor Committee. He even
went so far as to make a statement that Buffalo Public Schools had
enough mentor programs and did not need anymore. He did not know
who he was dealing with and I placed him on notice that he had no
credibility or integrity." See exhibit (XX).

~ An email dated July 24, 2013 from Dr. Jerome Watts stated "Attached
is the academic plan that we discussed. This program can meet the
academic needs of students in the mentor program." See exhibit (XX).

—A District Parent Coordinating Council meeting minutes page from November
10, 2014 which states "after school programs... moreover, we have
discovered that no title one money was used for summer school

—A 2 page report by Gary Orfield, Research Professor of Education,
Law, Pol. Science, and Urban Planning, dated February 10, 2015 and
sent to Timothy Blanchard, Director of Regional Office For Civil
Rights, U.S. Department of Education—which states "The fact that these
decisions are apparently being made by all the White members of the
board and the negative comments about race of his opponents are
central in both of Mr. Paladino's messages to me signify a severe level
of racial polarization in this largely African American school district
and city that is dangerous to the districts and the city's future and
undermines the commitment the board made in the agreement with
OCR. His letter shows deep disrespect for federal civil rights law." See exhibit (XX).

72.) That, plaintiff also submits evidence that Buffalo Public School
Board members and the Superintendent were fully on notice that they
could be sued "if they exercise powers and functions not conferred upon
them,s they are responsible for all losses that may ensue and they are of
course LIABLE for tort in like manner as others." He further points to
"Essentials of School Board Governance Module B School Board
Member Rights, Risks, Responsibilities" which specifically states
"Section 1983—Civil Rights Liability:
—lawsuit against a school district or official for violation of a federal
right, where otherwise there would be no remedy for the violation
Liability based on whether
—individual suing enjoyed a protected right,
—the school/employee deprived him of the right, and
—the cause of the deprivation was an official practice, policy or custom.
The Board Governance Module B further states "Public participation at
meetings"—adopt rules and regulations for maintenance of order but
CANNOT AUTOMATICALLY EXCLUDE MEMBERS OF PUBLIC
FROM ATTENDING MEETINGS. If permit comment can set time,
limit subject, determine place on agenda for comment." Plaintiff asserts
that School Board, along with School Board President Barbara Seals-
Nevergold ordered security to "Get him out of here!" when plaintiff
started reading his speech to audience and public television audience
about the negative conduct of board members while further demanding that the board
meet with him to discuss the actions of employees who had acted
arbitrarily, conspiratorily and fraudulently in shutting down the board
ordered impact study/cost analysis, which the board had previously voted to pass
via June 12, 2013 Resolution. This is further evidence that defendanrs
abridged or violated his and parents of minority students legal rights. See exhibit(XX).

73.) That, Plaintiff states all of the above materials and facts are evidence
of the grave nature of the educational situation in BPS district, and that he's a Black man
who sternly advocates for systemic structural change as impacting the
lives of inner-city parents of African and Hispanic descent. That the gist of
effective change in their lives and situation hinges on equality of educational
opportunity as there is sufficient proof that young Black and
Hispanic males receive disparate educational treatment in the Buffalo Public Schools
system, as further evidenced by the lack of required credits at high school grade level,
dismal graduation and disparate racially biased high drop-out rates, which simply
prove that in fact there exists historically such a despicable entity as the
schools-to-prison pipeline. It's one reason that plaintiff chose to become
a mentor and a minority parent advocate to work for systemic change in policies and programs
at BPS.

74.) That Buffalo Public Schools District receives federal funding and has a problem equitably
distributing funds it receives, and equitably allocating resources to accomplish the goals of
meaningful improvement in relative black student achievement throughout the district as
evidenced by defendants fraudulent, conspiratorial, deliberate indifference and discriminatory
practices as noted above in paragraphs 1 through 73 of this Amended
Complaint and Notice of Claim with various exhibits—and must be held accountable for their
illegal actions against Black plaintiff and Black and Hispanic parents of male at-risk
students attending BPS.

WHEREFORE, Plaintiff respectfully request this court grant relief in
the following:

A.) Plaintiff demands jury trial.

B.) Plaintiff demands judgment against defendants herein individually
and together or personal capacity.

C.) Court determine that this action can be maintained as Class Action status to include
minority parents of minority males attending Buffalo Public Schools whose educational
prospects for graduation would be enhanced by participating in 5000 Role Models Of
Excellence Project Buffalo Chapter.

D.) Declaratory judgment ordering Buffalo Board of Education and
Superintendent, to have district parent stakeholders and school district
put together a distinguished and reputable panel of qualified, and
honest people of integrity to complete the 6-12-13 board ordered impact
study/cost analysis of 5000 Role Models Of Excellence Project   (and fund it) which
was illegally, fraudulently and arbitrarily shut down due to the actions
and inactions (omissions) of board defendants, employees and defendant
L. Nathan Hare, who does not work for the Buffalo Board Of Education.

E.) Order the Buffalo Public School District (Buffalo Board Of Education)
to pay $1,000,000 (one million dollars in compensatory damages for it's liability
and unlawful actions as outlined in this lawsuit.

F.) Order the individual Board of Education members and employees
being sued in their capacity to pay $5,000,000 (five million dollars) in
compensatory damages for their unlawful actions as outlined in this
lawsuit.

G.) Order the Buffalo Board of Education and the individual board
members and employees being sued in their individual or personal
capacity to pay $5,000,000 (five million dollars) each in punitive damages for
their deliberate, indifferent and intentional unlawful actions as outlined
in this lawsuit.

H.) Order defendant L. Nathan Hare to pay $10,000,000 (ten million
dollars) in compensatory damages for his unlawful actions as outlined in this lawsuit.

I.) Order defendant L. Nathan Hare to pay $15,000,000 (fifteen million dollars) in punitive
damages for his intentional, deliberate, fraudulent and conspiracy
related unlawful actions as outlined in this lawsuit

J.) Award plaintiff costs of this action, together with reasonable attorney fees.

K.) Injunctive relief requiring BPS defendants to cease discriminating against at-risk minority
males in the allocation of district resources as regarding Federal funds and grant monies
received for establishing and running programs in Buffalo Public Schools District.

L.) Grant plaintiffs such additional equitable and legal relief as the court
deems just and proper in the circumstance.

M.) Compensation for aggravation of pre-existing
medical condition $1,000,000

DATED: December 14, 2015

Yours etc.

Charles Burgin

Charles Burgin Pro Se

22 Bennett Village Terrace
Buffalo, New York 14214
Bromaninc@gmail.com
(716) 207-4186

29