UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CHARLES BURGIN,

                    Plaintiff,

        v.                                              Case No.: 15-CV-0201S

BUFFALO BOARD OF EDUCATION; FORMER
BUFFALO PUBLIC SCHOOLS SUPERINTENDENT
PAMELA C. BROWN; ASSOCIATE
SUPERINTENDENT BUFFALO PUBLIC SCHOOLS
WILL KERESZIES; DIRECTOR OF SOCIAL STUDIES
BUFFALO PUBLIC SCHOOLS CHARLES BRANDY;
INTERIM SUPERINTENDENT BUFFALO PUBLIC
SCHOOLS DONALD A. OGILVIE; BOARD OF
EDUCATION MEMBER CARL PALADINO; BOARD
OF EDUCATION MEMBER PATRICIA PIERCE;
BOARD OF EDUCATION MEMBER LAWRENCE
QUINN; BOARD OF EDUCATION MEMBER
THERESA HARRIS-TIGG; BOARD OF EDUCATION
MEMBER BARBARA SEALS-NEVERGOLD; and
FORMER CHAIRMAN AND EXECUTIVE DIRECTOR
OF UNITED BLACK MEN'S THINK TANK OF
BUFFALO, L. NATHAN HARE,

                    Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF MOTION
# TO DISMISS AMENDED COMPLAINT

**HODGSON RUSS LLP**
*Attorneys for Defendants Buffalo Board of Education,*
*Pamela C. Brown; Will Kereszies; Charles Brandy;*
*Donald A. Ogilvie; Carl Paladino; Patricia Pierce;*
*Lawrence Quinn; Theresa Harris-Tigg; and Barbara*
*Seals-Nevergold*
Karl W. Kristoff
Kevin M. Kearney
The Guaranty Building,140 Pearl Street, Suite 100
Buffalo, NY  14202-4040
716.856.4000

## PRELIMINARY STATEMENT

In response to the Board of Education's motion to dismiss, Mr. Burgin has filed an Amended Complaint, and a Response which addresses several of the points made in the motion to dismiss. But neither the Amended Complaint, nor the Response, cure the deficiencies in plaintiff's case. He still fails to allege a property or liberty interest entitled to due process protection, or any sufficient basis for standing to advance the interests of students and parents in the District. His state law claims are not sufficiently pleaded, nor could they be. The Amended Complaint must be dismissed.

This memorandum is submitted on behalf of all defendants, with the exception of the newly named L. Nathan Hare. It will not repeat the contents of the District's memorandum in support of its motion to dismiss the original complaint. (Docket No. 3)

## AMENDED COMPLAINT

The plaintiff's Amended Complaint is easier to read, but nonetheless fails to state any viable claim. Simply put, Mr. Burgin had an idea which officials with the Buffalo School District briefly considered, and ultimately rejected. Although Mr. Burgin may feel that District officials were unfair and that the District passed up a great opportunity, the fact remains that his proposal for the "5000 Role Models of Excellence Project" did not amount to a liberty or property interest entitled to due process protection. Put another way, Mr. Burgin was not deprived of anything that the constitution protects. The plaintiff's unhappiness with the District does not support any viable claim.

Mr. Burgin's response clarifies that he is no longer pursuing claims under Title VII, New York's Executive Law § 290, or for intentional infliction of emotional distress. *See* Response, pp 1-2. As to his remaining claims, the few additional facts he alleges do not save any of his federal or state law claims. He has added claims purportedly based on Board of Education Policies, and federal Education law, but these fail as well. Simply put, the Amended Complaint adds more details, but still lacks the allegations of fact necessary to confer standing, or state a claim. The Amended Complaint should be dismissed.

## ARGUMENT

### I.     THE AMENDMENT DOES NOT SALVAGE THE DUE PROCESS CLAIMS

As set out in our memorandum seeking dismissal of the original complaint, Mr. Burgin did not have a protectable property or liberty interest in the 5000 Role Models of Excellence Project. While his response sets out additional details, such as an invitation to attend "a Congressional Black Caucus Education Forum" (Response, p. 2), no facts alleged in the Response or Amended Complaint go beyond the plaintiff's unilateral hope. (*See, e.g.*, Amended Complaint at ¶¶ 5, 40-41, 48). Similarly, while plaintiff takes issue with the District's assertion that he did not plead that "he provided the district with the necessary information about the program," plaintiff recites a number of excuses, but does not allege he provided the information. (Response, pp. 3-4). As before, he simply fails to allege a protected property interest, and as such lacks standing.[1]

---

[1]     *See* Memorandum in Support of Motion to Dismiss, at 7-8; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 8 (2004).

Much of plaintiff's Response consists of him reciting the phrase "Plaintiff disagrees" in response to points made by defendants on the motion to dismiss. Disagreement is not a substitute for well-pleaded facts. Similarly, plaintiff makes frequent references to disadvantaged black youth, but at no point articulates a valid equal protection claim.[2]

The plaintiff also has added references to a number of Buffalo Public School Board Policies in support of his claims. But he has not, and cannot, explain how these policies bestow enforceable rights on him. These policies are directed to parents, students, and teachers, and while they do not create legally enforceable rights for those groups, they certainly do not bestow any rights to Mr. Burgin. The particular policy he cites, No. 3170, is titled, "Parent Involvement Policy."[3] It recites a number of aspirational goals, but does nothing to guaranty or promise anything to anyone, and certainly not to an individual seeking to interest the District in a mentoring program.

---

[2] Plaintiff also asks the court to designate his case as a class action on behalf of "minority parents of minority males attending Buffalo Public Schools whose educations prospects for graduation would be enhanced by participating in 5000 Role Models of Excellence Project of Buffalo Chapter." Given that the Amended Complaint should be dismissed, there is no need to address its many deficiencies under F. R. Civ. P. 23, or the plaintiff's shortcomings as a class representative.

[3] A copy of Policy No. 3170 is attached in an appendix to this memorandum. In his Response plaintiff states he has made out a claim under the federal Elementary and Secondary Education Act (ESEA). Although the only reference to that act is in connection with a Board policy (Amended Complaint, ¶¶ 56, 59), and the Amended Complaint fails to properly allege a claim, it is well settled that there is no private right of action under the ESEA. *See, e.g., Newark Parents Ass'n v. Newark Pub. Schs.*, 547 F.3d 199, 212-213 (3rd Cir. 2008) (holding that there is no private right of action under the No Child Left Behind Act, which is the most recent reauthorization of the 1965 Elementary and Secondary Education Act); *Ass'n of Cmty Orgs. v. New York. City Dep't of Ed.*, 269 F. Supp. 2d 338, 344-47 (S.D.N.Y. 2003) (finding that there is no private right of action under the No Child Left Behind Act).

3

In sum, accepting all of its allegations as true, the Amended Complaint fails to state a plausible claim for relief. [4]  None of the additional details pleaded establish a cognizable property or liberty interest, or any injury that would confer standing.

## II.     THE AMENDED COMPLAINT DOES NOT STATE A FIRST AMENDMENT CLAIM

Paragraph 53 of the Amended Complaint claims that the defendants "acted with deliberate indifference to deny plaintiff an opportunity to be heard at a BOE 'speakers list' meeting held April 9, 2014."  Plaintiff claims he was prevented from speaking and escorted from the meeting "under a policy and custom of not publicly letting anyone speak out against any named board member or the Superintendent…." *Id.*  These allegations, which presumably are made to support his First Amendment claim, are facially deficient, and as anyone who regularly attends defendants' board meetings knows, simply untrue.

First, school board meetings are not a traditional public forum and those who wish to speak do not have an unlimited right to do so.[5]  The District has a specific policy, titled "Public Participation at Board Meetings," that spells out registration requirements, time restrictions, and limits on the total number of speakers. *See* Buffalo Board of Education Policy No. 1513.[6]  Plaintiff did not allege that he registered for the opportunity to speak, as required by

---

[4]     *See generally Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009); *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009).

[5]     *See generally Steinburg v. Chesterfield Cty. Planning Comm'n*, 527 F.3d 377, 384-385 (4th Cir. 2008).

[6]     A copy is attached in an appendix to this memorandum.  The policy requires each speaker to call and register by noon the day before the Board's meeting, limits remarks to 3 minutes, and puts a limit of 30 speakers per meeting.  If more than 30 speakers register, the Board President can waive the limit, or call a special meeting to hear additional speakers.  The policy is available on the District's website, http://www.buffaloschools.org/district.cfm?subpage=98465&adminActivate=1.

this policy, and as such he fails to allege that any restriction on his ability to address the Board was improper. Reasonable, content-neutral rules do not offend the First Amendment.

Any public body can enact reasonable limits on the public's ability to speak. The Board of Education's meetings, as set out in the Board policy, are at best characterized as a limited public forum,[7] in which the District can impose reasonable time, place, and manner restrictions.[8] Here the Board has done so, in a manner that is content neutral and places reasonable limits on speakers. The registration requirement is reasonably calculated to permit the Board to complete meetings, and because Mr. Burgin does not allege that he complied with that policy, he had no right to address the board at that time. Further, the plaintiff had other opportunities, and means, to communicate to the Board and District officials.

Plaintiff cites *Smith v. Central Dauphin School District*, 419 F. Supp. 2d 639 (M.D. Pa. 2005), but that decision, which reviewed a teacher's first amendment retaliation claim, has nothing to do with this case. In *Smith,* the teacher had a legally protected interest in her job; Mr. Burgin has no equivalent interest here.

## III.   STATE CONSTITUTIONAL CLAIMS MUST BE DISMISSED

As noted in the District's initial brief, plaintiff's state constitutional claims cannot survive if his federal constitutional claims are dismissed. It is well recognized that the equal

---

[7]   *See, e.g., City of Madison Joint Sch. Dist. No. 8 v. Wis. Emp't Relations Comm'n*, 429 U.S. 167, 174-76 (1975).

[8]   *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Berry v. City of New York*, 97 F. 3d 689, 696 (2d Cir. 1996).

protection[9] and due process[10] clauses of the Federal and New York State Constitutions are co-extensive. "Accordingly, the conclusion that Plaintiffs' federal equal protection and due process rights were not violated dictates the conclusion that the Plaintiffs' parallel rights under the state constitution were also not infringed."[11]  Plaintiff's state constitutional claims must be dismissed.

## IV.    THE PLAINTIFF'S STATE LAW CLAIMS FAIL

### A.    The fraud claim is not sufficiently pleaded

In addressing the fraud claim, Mr. Burgin refers the Court to the New York Court of Appeals decision in *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y. 3d 173, 919 N.Y.S. 2d 465, 944 N.E. 2d 1104 (2011), and recites 7 pages of "details" in support. (Amended Complaint pp. 18-25).  In *Mandarin Trading* the court affirmed the dismissal of a fraud claim for failure to allege a duty to the plaintiff, or any other basis for reliance.  The same is true here.  The seven pages of "details" raise a host of issues, but none that support a fraud claim in this case.

### B.    The Tortious Interference Claim

Plaintiff continues to pursue a tortious interference claim, but again fails to plead the necessary elements under New York law.[12]  Even if the necessary elements had been pleaded, the District, its employees, and members of the Board were not "strangers" to the

---

[9]    *See, e.g., Town of Southold v. Town of E. Hampton*, 477 F.3d 38, 53 n. 3 (2d Cir. 2007); *Pinnacle Nursing Home v. Axelrod*, 928 F.2d 1306, 1317 (2d Cir. 1999).

[10]    *Coakley v. Jaffe*, 49 F. Supp. 2d 615, 628 (S.D.N.Y. 1999).

[11]    *Febres v. City of New York*, 238 F.R.D. 377, 392 (S.D.N.Y. 2006); s*ee also Coakley*, 49 F. Supp. 2d at 628.

[12]    *See NBT Bancorp, Inc. v. Fleet/Norstar Fin. Grp., Inc.*, 87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996)(Elements are defendant's knowledge of plaintiff's business opportunity, its intentional interest with it, the defendant's use of wrongful means for the sole purpose of inflicting harm, a showing that the business relationship would have succeeded "but for" the interference, and damages).

potential business relationship, as required by New York law.[13]  Plaintiff cites an Eighth Circuit case, *Cole v. Homer Distrib. Co.*, 599 F.3d 865 (8th Cir. 2010), but that decision affirmed the dismissal of a tortious interference claim under Missouri law for the failure to allege a "valid business expectancy" based on a prior business relationship.  Plaintiff's claim here suffers from the same deficiency.  Nor does *Amaranth LLC v. J.P. Morgan Chase & Co.*, 71 A.D.3d 40, 888 N.Y.S.2d 489 (1st Dep't 2010) provide support.  Simply put, the District and its employees cannot tortuously interfere with a prospective business relationship that the District was to be a part of.

Plaintiff states that he has withdrawn his Intentional Infliction of Emotional Distress Claim, and "modified" it into a claim for aggravated stress and pain to an existing medical condition." (Response p. 5).  No such cause of action exists under New York or Federal law.  To the extent a separate cause of action does exist, it is for intentional infliction of emotional distress.  For the reasons set out in the District's original memo, plaintiff has not properly alleged that claim.

## C.    **The Court should not exercise Pendant Jurisdiction**

Even if the Court concludes that one of the plaintiff's state law claims states a cause of action, the Court should decline to exercise jurisdiction in the absence of a federal claim.  Although supplemental jurisdiction exists, a district court may decline to exercise it if it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Although there is no mandatory rule to be applied in all cases, it is clear that 'in the usual case

---

[13]      *See, e.g., Kassover v. Prism Venture Partners, LLC*, 53 A.D.3d 444, 449-50, 862 N.Y.S.2d 493 (1st Dep't 2008).

in which all federal-law claims are eliminated before trial,' the balance of factors will weigh in favor of declining to exercise supplemental jurisdiction."[14]  Given that the court has not invested time in this case beyond the motions to dismiss, it should decline to exercise jurisdiction over the state claims.

## V.    BOARD MEMBERS AND DISTRICT EMPLOYEES ARE ENTITLED TO QUALIFIED IMMUNITY

Given that the plaintiff has not pleaded a valid 1983 claim, the Court need not reach the question of whether school board members and district employees are entitled to immunity.  If it does reach the issue, both legislative and qualified immunity apply.

Certainly the Board was acting in a legislative capacity to the extent it considered Mr. Burgin's proposal.  Members of legislative bodies are entitled to an absolute privilege for actions taken in connection with their legislative function.[15]  *Bogan* extended absolute legislative privilege to members of local legislative bodies.[16]  Absolute legislative privilege applies to all actions and measures taken "in the sphere of legitimate legislative activity."[17]  The privilege applies not just to a member's actual vote on a particular issue, but also to the wide range of

---

[14]    *IPICC NY, Inc. v. Radiation Therapy Servs.*, 453 Fed. Appx. 105, 107 (2d Cir. 2011)(*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988)).

[15]    *Bogan v. Scott Harris*, 523 U.S. 44 (1998); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Tenney v. Brandhove*, 341 U.S. 367 (1951).

[16]    523 U.S. at 49.

[17]    *Tenney*, 341 U.S. at 376.

discussions, investigations, agreements and other activities related to the legislative process.[18]
This would include the Board's actions, or inaction, on plaintiff's proposal.

   In addition, all defendants are entitled to qualified immunity. Under this doctrine,
government officials sued for damages under Section 1983 are protected from suit if their actions
were not clearly unlawful in light of existing law.[19] The rationale for this immunity is that
"permitting damages suits against government officials can entail substantial social costs,
including the risk that fear of personal monetary liability and harassing litigation will unduly
inhibit officials in the discharge of their duties."[20] To this end, the Supreme Court developed a
doctrine "generally providing government officials performing discretionary functions with a
qualified immunity, shielding them from civil damages liability as long as their actions could
reasonably have been thought consistent with the rights they are alleged to have violated."[21] Put
another way, qualified immunity protects "all but the plainly incompetent or those who
knowingly violate the law."[22]

   Here, based on the information plaintiff claims he provided to various District
officials, no District employee would have reasonably believed that plaintiff had a

---

[18]   *Almonte v. City of Long Beach*, 478 F.3d 100 (2d Cir. 2007); *see also Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056 (11th Cir. 1992); *DeSisto Coll., Inc. v. Line*, 888 F.2d 755 (11th Cir. 1989).

[19]   *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see also Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir. 1992) ("Thus, even where the law and scope of permissible official conduct are clearly established, the defense of qualified immunity will protect a government official if it was 'objectively reasonable' for him to believe his acts were lawful.").

[20]   *Anderson*, 483 U.S. at 638.

[21]   *Id.*

[22]   *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985) (officials immune unless "the law clearly proscribed the actions" they took).

constitutionally protected interest in the 5000 Role Models mentoring program, or that he was somehow representing the rights of parents and students in the District. Although the Court need not reach this issue, qualified immunity clearly attaches.

## CONCLUSION

Giving plaintiff the benefit of every reasonable inference, his basic complaint is one that can only be addressed in the political arena. He believes that the Board of Education has not done enough to support at risk youth in the City Schools, and cites the Board ignoring his proposal as proof of the Board's indifference. But no matter how sincere and deeply felt his beliefs, or how profound the underlying problem, it is not one the federal courts can address. Simply put, Mr. Burgin has not suffered any injury that can be remedied by this court. His Amended Complaint must be dismissed.

Dated:        December 28, 2015

**HODGSON RUSS LLP**

*Attorneys for Defendants Buffalo Board of Education, Pamela C. Brown; Will Kereszies; Charles Brandy; Donald A. Ogilvie; Carl Paladino; Patricia Pierce; Lawrence Quinn; Theresa Harris-Tigg; and Barbara Seals-Nevergold*

By:___s/ Karl W. Kristoff_____
        Karl W. Kristoff
        Kevin M. Kearney
        The Guaranty Building
    140 Pearl Street, Suite 100
    Buffalo, NY  14202-4040
    716.856.4000

10

# **APPENDIX**

11

| **POLICY** | 2008 3170 |
| | 1 of 4 |
| | Community Relations |

**SUBJECT:   PARENT INVOLVEMENT POLICY**

**Parent Involvement Beliefs**

The Buffalo Public Schools believes that education is a partnership among the student, parent/guardian, school, and community.  The academic achievement and success of our students depend on the actions, relationships, and strengths of these partnerships.

Students, who are at the center of the partnerships, have unique skills, talents, and learning styles and are ultimately accountable for their own academic achievement.  Parents and families provide their children with the foundation of their values, including educational values, responsibilities, expectations, rules for home/school environment, and aspirations.  Parents are the primary providers in preparing their children for school readiness and academic success.  Parents' knowledge of their children's unique histories, traditions, life experiences, and learning experiences are important to their success.  Parents also share knowledge about community resources and challenges, both of which are valuable and critical to their child's progress. The educational responsibility for our students is shared by the parents, district, schools, and community.

**Parent Involvement Framework**

In 1999, the Buffalo Public Schools adopted the framework of the National Network of Partnership Schools, a research-based model of parent involvement designed by Dr. Joyce Epstein of Johns Hopkins University.  The Buffalo Chapter of this Partnership assists our schools in developing comprehensive programs of school, family, and community partnerships as part of their efforts to increase parent involvement.  This model is based on the following six types of parental involvement:

1. Parenting:  Assist families with parenting and child-rearing skills, understanding child and adolescent development, and setting home conditions that support children as students at each grade level.

2. Communicating:  Communicate with families about programs and student's progress through effective school-to-home and home-to-school communication.

3. Volunteering:  Improve recruitment, training work, and schedules to involve families as volunteers and audiences at the school or in other locations to support students and school programs.

(Continued)

| | 2008 | 3170 |
|---|---|---|
| **POLICY** | | 2 of 4 |
| | Community Relations | |

**SUBJECT:    PARENT INVOLVEMENT POLICY (Cont'd.)**

4.  Student Learning at Home:  Involve families with their children in learning activities at home, including homework and other curriculum-related activities and decisions.

5.  Decision Making:  Include families as participants in school decisions, governance, and advocacy through PTO/PTA, school councils, committees, and other parent organizations.

6.  Collaborating With the Community:  Coordinate resources and services for families, students, and the school with businesses, agencies, and other groups, and provide services to the community.

**District Responsibilities/Expectations**

To successfully implement the District's beliefs in parent involvement, support will be comprised of, but not limited to the following:

1.  Continuing to foster a network of sharing among schools through the Buffalo Chapter of the National Network of Partnership Schools framework.

2.  Providing a budget allocation to support district and school parental involvement initiatives.

3.  Establishing a parent organization in every school.

4.  Hiring a parent facilitator in every school.

5.  Disseminating information relevant to student achievement and parents' rights through community meetings, telephone contact, and individual schools.

6.  Providing for parent participation on all district decision-making teams.

7.  Supporting a District Parent Center that provides academic assistance to parents, students, and community.

8. Ensuring compliance with Section 1118 (parent involvement) of the No Child Left Behind legislation.

9.  Providing an effective mechanism to ensure mutual respect and accountability between school/parent partnerships.

(Continued)

| **POLICY** | 2008 | 3170 |
| | | 3 of 4 |
| | Community Relations | |

**SUBJECT:   PARENT INVOLVEMENT POLICY  (Cont'd.)**

**The District Parent Coordinating Council**

The purpose of the District Parent Coordinating Council is to ensure that a partnership with the District is created and to monitor the implementation of the Board of Education's Parent Involvement Policy.  The Council is the venue for disseminating relevant and important information from the Superintendent, as well as serving as a conduit for parental feedback to the District.  The Council receives support from Erie I BOCES Regional School Support Center, including having a member working in conjunction with the Council's Executive Board.  The general Council meetings are held monthly.  All district parents are welcome, including all organizations that represent parents, such as the Special Education Parent Advisory Committee and the Title 1 District Advisory Council.

**Building Responsibilities and Expectations**

Principals, in collaboration with parents and the support of the District Parent Coordinating Council, Buffalo Chapter of the National Network of Partnership Schools, and the Erie I BOCES Regional School Support Center, will:

1.  Establish a parent/family organization in each school and shall:
    - Call at least one business meeting of the parent organization each year in order to encourage the inclusion of new parents into the organization.
    - Elect officers and have regular meetings, scheduled in consultation with parents and announced publicly, inviting all to attend.
    - Be maintained as a viable entity to ensure that parents, who are full partners in their child's education, have an opportunity to be included in meetings and decision-making.
    - Elect/appoint members to represent all parents from the school community to the District Parent Coordinating Council, School Based Management Team, and Action Teams related to student achievement.

2.  Establish a parent room in each school.

(Continued)

| POLICY | 2008                  3170 |
|        | 4 of 4 |
|        | Community Relations |

SUBJECT:   PARENT INVOLVEMENT POLICY  (Cont'd.)

**Parent Responsibilities and Expectations**

Parent involvement is the action parents take to participate in regular, two way, and meaningful communication with their children's schools to provide an education that graduates productive citizens.  All parent involvement is aimed at increasing student achievement through various levels of involvement.

Parents can be defined as any parent, guardian, and/or person in parental relation to a child or children. Parents are expected to:

1.  Ensure that children come to school prepared and ready to learn.

2.  Provide high-quality nutrition, adequate sleep, and exercise for their children.

3.  Provide a learning environment for children to do homework and actively monitor their children's homework and level of completion.

4.  Review and support the District Attendance Policy.

5.  Review and support the District Code of Conduct.

6.  Attend parent/family organization meetings, parent/teacher conferences and workshops designed to increase student achievement.

7.  Communicate with teachers and principals as partners in their children's academic success.

The Buffalo Board of Education and the Superintendent of Buffalo Public Schools endorse and support this plan to help ensure the BPS mission of **"Putting children and families first to ensure high academic achievement for all."**

NOTE:     Refer also to Policies #7660 -- Parent Involvement -- Children With Disabilities and #8260 -- Programs and Projects Funded By Title I.

Adopted: 4/24/02
Revised:  02/13/08



| POLICY | 2002 | 1513 |
|--------|------|------|
|        | By-Laws | |

**SUBJECT:   PUBLIC PARTICIPATION AT BOARD MEETINGS**

The Board of Education recognizes its responsibility to hear and respond to public comment, and therefore encourages public participation at Board meetings.  There will be a specific agenda item at each Board meeting to provide an opportunity to address the Board.

The Board of Education meetings have had, on the average, between fifteen (15) and twenty (20) speakers for the regularly scheduled Board meetings.  The Board procedures are among the most open processes in government today and they will continue to be.  The public's opinion is of great value and the Board welcomes the public's input.

The Board of Education meeting will still commence at 5:30 p.m. on the regularly scheduled Wednesdays with public viewpoints as the first item of the meeting (except when awards are on the agenda).  The procedure will be as follows:

a)   Each speaker must call the Board of Education Office (851-3567 or 851-3568) by 12:00 noon of the Tuesday before the regular Wednesday meeting to register as a speaker.

b)   Each speaker has three (3) minutes to give their address.

c)   Thirty (30) speaker registration limit at each meeting.

d)   If more than thirty (30) speakers call the Board Office, the Board President will be notified by the Board Secretary and:

1.  The President has the ability to waive the thirty (30) speaker limit if he/she wishes;

or

2.  The President can call a special meeting in a timely manner to hear the additional speakers.

Adopted:  4/24/02